# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
June 30, 2014

Lyle W. Cayce
Clerk

No. 13-40367

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

versus

JUAN CARLOS RAMOS-DELGADO,

Defendant–Appellant.

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

Consolidated with
No. 13-40394

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

versus

WILSON SALGADO-FLORES,

Defendant–Appellant.

Appeals from the United States District Court
for the Southern District of Texas

No. 13-40367
No. 13-40394

Before SMITH, WIENER, and PRADO, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Juan Ramos-Delgado and Wilson Salgado-Flores appeal the application of a ten-level enhancement under United States Sentencing Guidelines § 2L1.1(b)(7). Because their actions meet the but-for causation standard required by the guidelines, we affirm.

I.

Ramos-Delgado drove a number of illegal aliens and Salgado-Flores, a coyote, north on I-35 in a stolen truck. When Ramos-Delgado saw border patrol agents running his plates behind them, he attempted to lose them by making an abrupt left turn over the median, crossing the southbound lanes, and crashing through a fence into a tree.

Two of the illegal aliens riding unrestrained in the bed of the truck were seriously injured. One, Solomon Carcamo-Bautista, was thrown from the truck and suffered massive skull fractures and a diffuse anoxic brain injury involving the cerebral cortex and basal ganglia. He was initially unresponsive and soon slipped into a coma from which he did not emerge; he suffered from frequent bouts of fever and tachycardia brought on by unknown infections and was treated with antibiotics. Although his prognosis was poor, he was transferred to his home country, Honduras, at the request of his family.

Ramos-Delgado and Salgado-Flores pleaded guilty to various counts related to the transportation of illegal aliens. Initially, the probation officer recommended a six-level enhancement under § 2L1.1(b)(7)(C) based on the permanent or life-threatening injuries to Carcamo-Bautista and the other alien. Before sentencing, however, the government received an email from the

2

Honduran consulate informing them of Carcamo-Bautista's death.  As a result, the probation officer changed his recommendation to a ten-level enhancement under § 2L1.1(b)(7)(D).  Because of poverty, however, the family members were unable to obtain a death certificate.

At sentencing, defense counsel objected to the increased enhancement, asserting that there was no proof of Carcamo-Bautista's death and insufficient evidence to show that his death was the result of the crash.  Instead, counsel urged, the six-level enhancement for life-threatening injuries was appropriate.

The district court disagreed.  After reviewing the medical records, it found that Carcamo-Bautista had died from the injuries.  Consequently, it applied the ten-level enhancement and sentenced Ramos-Delgado and Salgado-Flores to sentences near the high and low ends, respectively, of the resulting guideline range.

## II.

We review *de novo* a district court's interpretation or application of the sentencing guidelines and its factual findings for clear error.  *See United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008).  "Furthermore, in determining whether an enhancement applies, a district court is permitted to draw reasonable inferences from the facts, and these inferences are fact-findings reviewed for clear error as well."  *United States v. Caldwell*, 448 F.3d 287, 290 (5th Cir. 2006).  "Under the clearly erroneous standard, we will uphold a finding so long as it is plausible in light of the record as a whole."  *United States v. Ekanem*, 555 F.3d 172, 175 (5th Cir. 2009) (internal quotation marks omitted).  "The government must prove sentencing enhancements by a preponderance of the evidence."  *United States v. Juarez*, 626 F.3d 246, 251 (5th Cir. 2010).

No. 13-40367
No. 13-40394
III.

The defendants challenge only the application of a ten-level, and not six-level, enhancement, maintaining that § 2L1.1(b)(7) requires that the defendant's actions caused the injury or death. Because the cause of Carcamo-Bautista's death is unknown, they claim, there is no evidence of the required causal relationship, so they cannot be held accountable. We disagree.

Although this court has yet to address what causation is required under § 2L1.1(b)(7),[1] our sister circuits have split on this issue. The Eighth and the Ninth Circuits have read the section to require direct or proximate causation.[2] The Tenth and Eleventh Circuits, on the other hand, have rejected a requirement of proximate causation because "[t]he guideline contains no causation requirement and we have no license to impose one."[3] After reviewing the plain language of § 2L1.1(b)(7), we agree with the Tenth Circuit that the guideline enhancement has no causation requirement.[4]

---

[1] We have pretermitted whether or what form of causation is required, holding that if such a requirement existed it was met in the cases presented. *See United States v. de Jesus-Ojeda*, 515 F.3d 434, 443–44 (5th Cir. 2008) ("Even if foreseeability is required before this enhancement may be applied, an issue we do not decide, it was foreseeable . . . ."); *United States v. Garcia-Guerrero*, 313 F.3d 892, 898–99 (5th Cir. 2002) ("We need not decide whether a causal link between the substantially risky conduct . . . and the death of an individual . . . must exist for an enhancement under [§ 2L1.1(b)(7)]. Here, the conduct creating a substantial risk of death or serious bodily injury . . . and the death . . . are causally yoked . . . .").

[2] *See United States v. Flores-Flores*, 356 F.3d 861, 862 (8th Cir. 2004); *United States v. Herrera-Rojas*, 243 F.3d 1139, 1144–45 n.1 (9th Cir. 2001) ("We assume, however, that for [§ 2L1.1(b)(7)] to apply, the relevant death or injury must be causally connected to dangerous conditions created by the unlawful conduct, as it was in this case.").

[3] *United States v. Cardena-Garcia*, 362 F.3d 663, 666 (10th Cir. 2004); *see also United States v. Zaldivar*, 615 F.3d 1346 (11th Cir. 2010).

[4] "If any person died or sustained bodily injury, increase the offense level according to the seriousness of the injury:

. . .

(C) Permanent of Life-Threatening Bodily Injury        add **6** levels

4

No. 13-40367
No. 13-40394

Therefore, the only causation requirement is that contained in § 1B1.3, which describes the general relevant conduct that may be considered in determining the guideline range.[5]  In pertinent part, under § 1B1.3(a)(3), relevant conduct includes "all harm that resulted from the acts and omissions specified in subsections (a)(1) and (a)(2) above, and all harm that was the object of such acts and omissions."[6]  Because the ordinary meaning of "resulted from" imposes a requirement of actual or but-for causation[7] and textual and contextual reasons do not justify the use of an alternative causation,[8] we conclude that—unless otherwise specified—the defendant's relevant conduct must be a but-for cause of a harm for that harm to be considered in assigning the guideline range.  In other words, Ramos-Delgado's and Salgado-Flores's conduct in transporting illegal aliens must be the but-for cause of Carcamo-Bautista's death for that death to be considered in applying the ten-level enhancement.

"This standard requires the plaintiff to show that the harm would not have occurred in the absence of—that is, but for—the defendant's conduct."[9]

---

(D) Death                                                                           add **10** levels."

U.S.S.G. § 2L1.1(b)(7).

[5] "Chapters Two (Offense Conduct) and Three (Adjustments).  Unless otherwise specified, (i) the base offense level where the guideline specifies more than one base offense level, (ii) specific offense characteristics and (iii) cross references in Chapter Two, and (iv) adjustments in Chapter Three, shall be determined on the basis of the following: . . . ."  U.S.S.G. § 1B1.3(a).

[6] We have preserved the question whether § 1B1.3(a)(3) contains a causation requirement.  *See United States v. Valenzuela-Contreras*, 340 F. App'x 230, 236 (5th Cir. 2009) (per curiam).

[7] *See Burrage v. United States*, 134 S. Ct. 881, 887–88 (2014).

[8] *See Paroline v. United States*, 134 S. Ct. 1710, 1727 (2014) (quoting *Burrage*, 134 S. Ct. at 888).

[9] *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2525 (2013) (internal quotation marks omitted).

No. 13-40367
No. 13-40394

For example, the Supreme Court has described but-for causation in terms of

> a baseball game in which the visiting team's leadoff batter hits a home run in the top of the first inning. If the visiting team goes on to win by a score of 1 to 0, every person competent in the English language and familiar with the American pastime would agree that the victory resulted from the home run. This is so because it is natural to say that one event is the outcome or consequence of another when the former would not have occurred but for the latter.[10]

This differs from contributing-factor causation standards: if the visiting team had won 5 to 2 rather than 1 to 0, each of the five runs would have contributed to the win but no one run could be considered a but-for cause of the victory.[11]

But-for causation, in the absence of a requirement of direct or proximate causation, however, is not a difficult burden to meet. As long as the defendants' actions were a but-for cause of the ultimate harm, it does not matter whether the initial action directly resulted in the harm but only that the harm would not have occurred but-for the initial action. For example, if in the present case defendants' actions had merely sprained a passenger's hand, making him go to the hospital, and the hospital exploded from a gas leak, the defendants' actions would still have been a but-for cause of death. But for his sprained hand the passenger would not have gone to the hospital. Obviously proximate cause would not be met in that situation, but proximate or legal causation is not required by the guidelines.

Additionally, an incident may have many but-for causes. Take a

---

[10] *Burrage*, 134 S. Ct. at 888. "The same conclusion follows if the predicate act combines with other factors to produce the result, so long as the other factors alone would not have done so—if, so to speak, it was the straw that broke the camel's back." *Id.* "Thus, if poison is administered to a man debilitated by multiple diseases, it is a but-for cause of his death even if those diseases played a part in his demise, so long as, without the incremental effect of the poison, he would have lived." *Id.*

[11] *See id.*

6

No. 13-40367
No. 13-40394

variation of Justice Scalia's baseball example:  If the starting pitcher in the first inning had not left his fastball hanging over the plate, the leadoff batter would not have hit a home run in the first inning.  Therefore, the victory resulted from the hanging fastball just as much as the homerun.

Under that standard, the district court did not reversibly err.  Based on Carcamo-Bautista's medical condition and the email from the Honduran con-sulate, the court committed no clear error in finding that Carcamo-Bautista is deceased.  Similarly, considering his medical records, it is plausible that he died from the injuries sustained in being thrown from the bed of a truck.  In light of these findings of fact, the defendants' conduct was the but-for cause of the injuries and death.

The judgment of sentence is AFFIRMED.

7