# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

———————

No. 18-40361

———————

United States Court of Appeals
Fifth Circuit

**FILED**

March 20, 2019

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

v.

DANIEL SALINAS,

        Defendant – Appellant.

------------------------------------------------------------------------

cons w/ 18-40407

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

v.

MARK ANTHONY SALINAS,

        Defendant – Appellant.

————————

Appeals from the United States District Court
for the Southern District of Texas

————————

Nos. 18-40361, 18-40407

Before HIGGINBOTHAM, ELROD, and HO, Circuit Judges.

PER CURIAM:

Two brothers pleaded guilty to conspiring to transport illegal aliens within the United States by means of a motor vehicle, in violation of 8 U.S.C. § 1324(a)(1). One of the aliens they transported died from a heart attack while fleeing law enforcement. The brothers now contest their sentences, claiming that the district court improperly applied an enhancement that is imposed when a death results from the illegal transportation of aliens. The brothers assert that the death was too tenuously connected to the defendants' conduct to justify the sentencing enhancement. We reject this argument and affirm the sentence.

I.

Mark Anthony Salinas entered into an agreement to smuggle illegal aliens, which he referred to his brother Daniel Salinas. Under the terms of the agreement, Daniel would be paid $500 for each alien that Daniel smuggled, and Mark would be paid a referral fee of $50 for each alien that Daniel transported.

Consistent with this agreement, Daniel picked the aliens up in his Chevy Silverado. Police Officer Matias Barrera, on routine patrol at the time, spotted the Silverado and recognized Daniel as a suspected alien smuggler. Barrera started to follow the truck in his patrol car. When Barrera saw Daniel run a stop sign, Barrera activated his emergency lights in an attempt to conduct a traffic stop.

Daniel refused to stop, and a high-speed chase ensued. Barrera pursued him until Daniel drove into an empty lot and crashed into a tree. Daniel exited the truck and fled on foot. Five aliens also exited the vehicle. Barrera immediately apprehended two of them. The other three sprinted on foot into nearby brush. Border Patrol agents arrived and located two of the three fleeing

aliens. The third, Pedro Martinez, became ill in the brush and was eventually transported to a hospital, where he later died. An autopsy, conducted by Dr. Fortansus Salinas,[1] revealed that Martinez died from "acute myocardial infarction," the technical term for a heart attack.

At sentencing, the district court applied a 10-level enhancement that is imposed "if any person died" in the course of "[s]muggling, [t]ransporting, or [h]arboring an [u]nlawful [a]lien." U.S.S.G. § 2L1.1. In reaching this conclusion, the district court heard testimony from Dr. Salinas about the autopsy. The doctor related that Martinez "had an occlusion or a clot in the coronary that led to him not being able to get oxygen to the heart itself. And [the heart] undergoes a process where he starts to die. We call that myocardial infarction, which is a heart attack. It also throws him into abnormal rhythms. Once you do that, you stop the heart and it just stops functioning, usually collapse." Dr. Salinas further elaborated that, although Martinez was just 28 years old, the blockage in his arteries was something that the doctor would expect to see more frequently in people in their "30s, 40s, 50s." Martinez had other health problems, too: he had an extensive pulmonary edema—which is the collection of excess fluid in air sacs in the lungs, making it hard to breathe—that Dr. Salinas thinks started prior to the heart attack. Mr. Martinez also had extensive fatty infiltration of his liver, a result of both his genetics and his diet. Dr. Salinas said he found no evidence that Mr. Martinez suffered a head injury or any scratches on his body.

In his testimony, Dr. Salinas shed important light on the connection between the heart attack and Martinez's running from law enforcement. While Dr. Salinas opined that it was possible for the heart attack to have happened

---

[1] The record does not indicate any relationship between the doctor and the defendants, despite the shared last name.

Nos. 18-40361, 18-40407

anywhere—even while Martinez was just sitting down—Dr. Salinas believed that this particular heart attack was precipitated by the intensity of the situation and the stress that running placed on Martinez's heart. Dr. Salinas testified that "when [Martinez] started running [from law enforcement, he] demanded more work from his heart; and he just couldn't comply, and the heart couldn't comply with it; and he collapse[d], and he die[d]." The doctor explained further, "[a]nything that will excite you or will get your heart going can give you this type of scenario." Specifically, in response to questions, Dr. Salinas explained:

> Q: Okay. But in this particular instance, you believe that [the heart attack] was pursuant to being chased?
>
> A: I believe so, yes.
>
> Q: That caused [Martinez's] heart attack?
>
> A: That's correct; that's what I believe.

After applying the enhancement to each defendant's sentence, the district court sentenced Daniel to 100 months imprisonment, plus three years of supervised release, and Mark to 78 months imprisonment, also followed by three years of supervised release. The brothers objected to the enhancement, and the district court overruled. The defendants timely appealed.

## II.

This court reviews the district court's interpretation and application of the Sentencing Guidelines de novo and the district court's findings of fact for clear error. *United States v. Ramos-Delgado*, 763 F.3d 398, 400 (5th Cir. 2014). In deciding "whether an enhancement applies, a district court is permitted to draw reasonable inferences from the facts, and these inferences are fact-findings reviewed for clear error as well." *United States v. Caldwell*, 448 F.3d 287, 290 (5th Cir. 2006). "Under the clearly erroneous standard, we will uphold a finding so long as it is 'plausible in light of the record as a whole.'" *United*

*States v. Ekanem*, 555 F.3d 172, 175 (5th Cir. 2009) (quoting *Caldwell*, 448 F.3d at 290).  The government "must prove sentencing enhancements by a preponderance of the evidence."  *United States v. Juarez*, 626 F.3d 246, 251 (5th Cir. 2010).  And we may affirm an enhancement on any ground supported by the record.  *United States v. Jordan*, 851 F.3d 393, 399 (5th Cir. 2017).

The Sentencing Guidelines apply an enhancement "[i]f any person died or sustained bodily injury" in the course of smuggling, transporting, or harboring an unlawful alien.  U.S.S.G. § 2L1.1(b)(7).  In the case of "death"—as opposed to mere injury—that enhancement increases the offense level by 10.  U.S.S.G. § 2L1.1(b)(7)(D).  In *United States v. Ramos-Delgado*, we held that the defendant's conduct must simply be the but-for cause of the death, not its proximate cause.  763 F.3d at 401 (citing *Burrage v. United States*, 134 S. Ct. 881, 887–88 (2014)).

In interpreting the provision this way, our court observed that the provision itself "contains no causation requirement" and therefore acknowledged that "we have no license to impose one."  *Id.* at 401.  We explained that the only applicable causation requirement, therefore, is the general but-for causation requirement of U.S.S.G. § 1B1.3, an overarching provision that defines the circumstances that a sentencing court may consider in determining whether any provision of the Guidelines applies.  *Id.*  Section 1B1.3 allows sentencing courts to consider harm only if it "resulted from" or "was the object of" certain acts and omissions of the defendant.  U.S.S.G. § 1B1.3(a)(3).  The *Ramos-Delgado* court read the phrase "resulted from" according to its ordinary meaning, imposing a but-for causation requirement,

Nos. 18-40361, 18-40407

just as the Supreme Court had in *Burrage v. United States*, 571 U.S. 204, 211 (2014).[2]

But-for causation requires the government to show merely "that the harm would not have occurred in the absence of—that is, but for—the defendant's conduct." *Id.* at 211 (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 346–47 (2013)). This is "not a difficult burden to meet." *Ramos-Delgado*, 763 F.3d at 402. An event might have "many but-for causes." *Id.* For example, the Supreme Court has explained that a leadoff batter's home run is just one among many but-for causes of a team's 1-to-0 victory, which resulted also from the winning team's "skillful pitching, the coach's decision to put the leadoff batter in the lineup, and the league's decision to schedule the game," *Burrage*, 571 U.S. at 212, and perhaps also from the opposing pitcher leaving "his fastball hanging over the plate," *Ramos-Delgado*, 763 F.3d at 402. A proximate-cause inquiry would ask how *directly* each cause affected the final outcome, but the but-for causation standard asks simply whether the outcome would have occurred in the absence of the action. *Burrage*, 571 U.S. at 211. *Ramos-Delgado* explains that even if an immigrant got thrown from a defendant's truck, sprained his hand, went to the hospital because of the sprain, and then died from a gas leak at the hospital, the enhancement would still apply. *Ramos-Delgado*, 763 F.3d at 402. It does not matter that the gas leak was unforeseeable to the defendant or only tenuously connected to the defendant's conduct.

---

[2] At oral argument, counsel for Daniel described *Burrage* as holding that "when a defendant's conduct is not . . . the independently sufficient cause of death, the defendant cannot be held liable." Counsel then suggested that *Ramos-Delgado* misreads *Burrage*. Counsel's description of *Burrage* omits the key language of the case's holding. The Supreme Court in *Burrage* held that "at least where use of the drug distributed by the defendant is not an independently sufficient cause of the victim's death or serious bodily injury, a defendant cannot be liable . . . *unless such use is a but-for cause of the death or injury*." *Burrage*, 571 U.S. at 218 (emphasis added). *Ramos-Delgado* is fully consistent with this holding.

Nos. 18-40361, 18-40407

Two published Fifth Circuit cases illustrate the application of this rule. First, in *Ramos-Delgado*, the defendant tried to evade Border Patrol while driving a pickup truck with aliens in the truck's bed. *Id.* at 400. One of the aliens was thrown from the truck, suffering a massive skull fracture and brain injuries from which he died. *Id.* We affirmed the district court's application of the enhancement. In light of the victim's "medical records, it [was] plausible that he died from the injuries sustained in being thrown from the bed of a truck." *Id.* at 402. And because the victim would not have been thrown from the truck's bed but for the defendant's decision to transport the aliens in the first place, the defendant's conduct was a but-for cause of the death. *Id.*

Similarly, in *United States v. Ruiz-Hernandez,* the defendant transported an alien at night in an inner tube across a ship channel. 890 F.3d 202, 207–08 (5th Cir. 2018). An unlit Coast Guard vessel sped through the channel, killing the alien. *Id.* We held that the defendant's conduct was a but-for cause of the death because, even though the vessel's speed and lack of lights contributed greatly to the death, the alien would not have been in the ship's path in the absence of the defendant's conduct. *Id.* at 212–13.

The instant case falls squarely within the reach of *Ramos-Delgado* and *Ruiz-Hernandez*. The district court heard extensive testimony from Dr. Salinas, who concluded that this particular heart attack was triggered by Martinez's running. In light of this testimony, it was certainly "plausible" that Martinez's fatal heart attack was caused by the running. *Ramos-Delgado*, 763 F.3d at 402. The district court did not clearly err in accepting that testimony and making this finding of fact. Martinez would not have run had the Salinas brothers not arranged to pick up the aliens, driven the aliens in the Silverado, and crashed the Silverado into a tree with law enforcement closing in. Just as in *Ramos-Delgado* and *Ruiz-Hernandez*, the Salinas brothers were fully responsible for placing the victim in a precarious position where subsequent

7

Nos. 18-40361, 18-40407

but-for causes ultimately took his life. In short: No criminal conduct, no running. No running, no death. The defendants' conduct was the but-for cause of Martinez's death, which is all that this sentencing enhancement requires.

### III.

We are bound by precedent—both the Supreme Court's and our own—and by our fidelity to the text of the Guidelines to impose only a but-for causation requirement. Under that standard, the sentencing enhancement is appropriate. For these reasons, we AFFIRM the district court's sentence.