# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 25, 2026

Lyle W. Cayce
Clerk

———————

No. 25-50853

———————

United States of America,

*Plaintiff—Appellee*,

*versus*

Ramon Aguayo-Galvez,

*Defendant—Appellant*.

———————————————————

Appeal from the United States District Court
for the Western District of Texas
USDC No. 2:24-CR-2990-1

———————————————————

Before King, Smith, and Ramirez, *Circuit Judges*.

Per Curiam:[*]

Ramon Aguayo-Galvez challenges the district court's application of a sentencing enhancement under § 2L3.1(b)(8)(A)(ii) of the United States Sentencing Guidelines. We VACATE Aguayo-Galvez's sentence and REMAND for resentencing.

———————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 25-50853

I

Aguayo-Galvez pleaded guilty to conspiring to transport illegal aliens, in violation of 8 U.S.C. § 1324(a). In the stipulation of facts supporting his plea, he admitted that he knowingly drove two illegal aliens to the train station in Del Rio, Texas, on October 24, 2024. According to a Presentence Report (PSR) prepared by the United States Probation Office (USPO), the aliens told agents that they had paid more than $9,000 to be taken into the United States and taken to a stash house. They were extorted an additional $535 each to continue staying at a stash house.

The PSR assessed a base offense level of 12 under U.S.S.G. § 2L1.1(a)(3). It then adjusted the offense level to 18 under § 2L1.1(b)(8)(A) because it found that the aliens had been involuntarily detained through coercion, threat, or in connection with a demand for payment when they were extorted an additional $535 per person to continue their stay at the stash house.[1] After applying a three-level reduction for acceptance of responsibility and a two-level reduction for being a zero-point offender, the PSR calculated a total offense level of 13. Based on a criminal history category of I, it found the resulting Guidelines range to be 12 to 18 months of imprisonment. Without the § 2L1.1(b)(8)(A) enhancement, the total offense level would have been eight, resulting in a Guidelines range of zero to six months.

Aguayo-Galvez objected to application of the § 2L1.1(b)(8)(A) enhancement, asserting that the aliens had not been involuntarily detained in connection with a demand for payment because the payment was for their continued stay at the stash house, a voluntary choice. The USPO submitted

---

[1] Based on the number of aliens involved in the offense, the PSR also assessed a three-point enhancement that is not relevant to this appeal because Aguayo-Galvez's objection to application of that enhancement was sustained at sentencing, and its removal did not affect the Guidelines range.

an addendum to the PSR, recommending that the objection be overruled because the PSR reflected that the aliens alleged they had paid more than $9,000 to be crossed into the United States and taken to a stash house. They were then extorted $400 each to be taken to the train station, but their train tickets were canceled several times without explanation, and the stash house operator attempted to extort them for an additional $125 each to continue to stay at the stash house.

At sentencing, Aguayo-Galvez renewed his objection to application of the § 2L1.1(b)(8)(A) enhancement, arguing that there was no evidence to corroborate the aliens' statements that they had been extorted, but even if they had been extorted, the payment demand was not connected to any involuntary detention. After finding sufficient evidence of extortion, the district court reasoned that, if a coconspirator demanded payment and threatened to throw the aliens out for failure to pay, thereby making them susceptible to capture and deportation, the choice to stay was not voluntary. Citing our decision in *United States v. Marquez-Rendon*, the district court overruled Aguayo-Galvez's objection and adopted the PSR. 405 F. App'x 898, 902 (5th Cir. 2010) (per curiam) (affirming application of the § 2L1.1(b)(8)(A) enhancement because the aliens had been told they had to pay more money or they would be returned to Mexico).

The district court sentenced Aguayo-Galvez to the bottom of the Guidelines range calculated in the PSR. It explained:

> In this case, a sentence of 12 months is sufficient but not greater than necessary to comply with the statutory purposes and factors set forth in Title 18, United States Code § 3553(a). The Defendant appears before the Court having been convicted of Conspiracy to Transport Illegal Aliens, in violation of Title 8, United States Code § 1324(a)(1)(A)(v)(i) and 1324(B)(i). The Court also believes that this sentence is appropriate because the Court also finds, as stated in the [PSR] and has already, to

some degree, been identified by the Government, that the Defendant is before the Court for this second federal conviction. Now granted, that other smuggling or attempted smuggling conviction occurred many years ago, but this is his second federal conviction. During the instant offense, the Defendant attempted to transport two illegal aliens further into the United States by assisting them and getting them to the train, which would then take them further into the United States. The aggravating factors in this case have already been discussed. The fact that the individuals were being coerced to pay more money to either stay at the stash house or being taken to the train terminal and the fact that the defendant brought his daughter along and was present during the crime itself. So the Court believes that this sentence at the bottom of the appropriate – of the Advisory Guideline Range is appropriate.

So the Court's sentence here today reflects the nature of the instant offense as well as the described history and circumstances of this Defendant and the risk that he presents to the public of committing similar crimes in the future. The Court's sentence will serve as just punishment, promote respect for the law, deter future violations of the law, and protect the public. In this regard, although the Court finds that the Guideline calculations announced at this hearing are correct, to the extent that they were incorrectly calculated, the Court would have imposed the same sentence without regard to the applicable Guideline Range in light of the factors set forth in Title 18, United States Code § 3553(a).

Aguayo-Galvez timely appealed.

## II

We review preserved challenges to the district court's interpretation and application of the Sentencing Guidelines *de novo*, and its factual findings for clear error. *United States v. Salinas*, 918 F.3d 463, 465 (5th Cir. 2019). "A factual finding is not clearly erroneous if it is plausible in light of the record

as a whole." *United States v. Trujillo*, 502 F.3d 353, 356 (5th Cir. 2007). In assessing the applicability of an enhancement, "a district court is permitted to draw reasonable inferences from the facts, and these inferences are fact-findings reviewed for clear error as well." *Salinas*, 918 F.3d at 465 (quoting *United States v. Caldwell*, 448 F.3d 287, 290 (5th Cir. 2006)). "We will find clear error only if a review of the record results in a 'definite and firm conviction that a mistake has been committed.'" *United States v. Zuniga*, 720 F.3d 587, 590 (5th Cir. 2013) (quoting *United States v. Rodriguez*, 630 F.3d 377, 380 (5th Cir. 2011)).

## III

Aguayo-Galvez challenges the district court's application of the "involuntarily detained" enhancement under U.S.S.G. § 2L1.1(b)(8)(A)(ii).

### A.    Section 2L1.1(b)(8)(A)(ii)

Section 2L1.1(b)(8)(A) provides that "[i]f an alien was involuntarily detained through coercion or threat, or in connection with a demand for payment, (i) after the alien was smuggled into the United States; or (ii) while the alien was transported or harbored in the United States," the offense level should be increased by two levels unless the resulting offense level is less than level 18, in which case the offense level is increased to 18. § 2L1.1(b)(8)(A). The term "involuntarily detained" is not defined in either the Guidelines or its commentary. *See id.* "When terms in Guidelines are not defined, 'we must give them their ordinary meaning.'" *United States v. Buendia*, 73 F.4th 336, 339 (5th Cir. 2023) (quoting *United States v. Lyckman*, 235 F.3d 234, 238 (5th Cir. 2000)).

The ordinary meaning of "involuntarily" (or its adjective form, "involuntary") is an action done against one's will. *See Involuntarily*, The Oxford English Dictionary (online ed. 2026) (defining "involuntarily" as "[i]n an involuntary manner; without exercise or co-

operation of the will"); *see also Involuntary*, BLACK'S LAW DICTIONARY (12th ed. 2024) (defining "involuntary" as "[n]ot resulting from a free and unrestrained choice; contrary to one's will"); *Involuntary*, MERRIAM-WEBSTER DICTIONARY (online ed. 2026) (defining "involuntary" as "done contrary to or without choice"). "Detain" generally means "[t]o keep in confinement or under restraint" or "to keep prisoner." *Detain*, THE OXFORD ENGLISH DICTIONARY (online ed. 2026); *see Detain*, MERRIAM-WEBSTER DICTIONARY (online ed. 2026) (defining "detain" as "to hold or keep in or as if in custody"). In light of these definitions, a person is "involuntarily detained" when he is held or confined against his will.

Our court has not previously considered the definition of "involuntarily detained" as used in § 2L1.1(b)(8)(A) or what facts suffice to meet its definition. Based on our precedent addressing § 2L1.1(b)(8)(A), however, the central consideration is whether an alien is being detained against his will. For example, in *Buendia*, we held that the involuntary detention enhancement "clearly applies when violence or threats of violence are conditioned on a migrant's attempt to leave." 73 F.4th at 339 (citing *United States v. Rocha-Guajardo*, 772 F. App'x 229, 230 (5th Cir. 2019) (unpublished) (per curiam)). Looking to the dictionary definitions of "coercion" or "threat," which are also not defined in the Guidelines,[2] we

---

[2] *Id.* at 349 (citing Black's Law Dictionary defining "coercion" as "[c]ompulsion of a free agent by physical, moral, or economic force or threat of physical force," and The Oxford English Dictionary defining "coercion" as "[c]onstraint, restraint, compulsion; the application of force to control the action of a voluntary agent"); *id.* (citing Black's Law Dictionary defining "threat" as "[a] communicated intent to inflict harm or loss on another or on another's property, esp. one that might diminish a person's freedom to act voluntarily or with lawful consent; a declaration, express or implied, of an intent to inflict loss or pain on another," and The Oxford English Dictionary defining "threat" as "[a] denunciation to a person of ill to befall him; esp. a declaration of hostile determination or of loss, pain,

observed that the enhancement is properly applied where a defendant locked the exits of a stash house "from the outside in order to prevent the migrants inside from escaping." *Id.* at 340 (citing *United States v. DeLeon*, 484 F. App'x 920, 934 (5th Cir. 2012) (unpublished) (per curiam)); *see, e.g.*, *Rocha-Guajardo*, 772 F. App'x at 230 (upholding enhancement where defendant "kicked and punched two individuals *who attempted to escape the stash house*" and "a co-conspirator threatened, while holding a gun, to shoot anyone *who left the stash house without permission*") (emphasis added); *DeLeon*, 484 F. App'x at 934 (affirming enhancement where exits of stash house were locked from the outside to prevent aliens inside from escaping); *United States v. Gonzalez-Mendoza*, 401 F. App'x 997, 998 (5th Cir. 2010) (unpublished) (per curiam) (upholding enhancement where defendants demanded additional payments from aliens detained under armed guard "*in exchange for their release*") (emphasis added); *United States v. Marquez-Rendon*, 405 F. App'x 898, 902 (5th Cir. 2010) (unpublished) (per curiam) (upholding enhancement where "aliens were forced to pay an additional $500 *if they wanted to leave the residence*, or they would be returned to Mexico") (emphasis added). Accordingly, we hold that § 2L1.1(b)(8)(A) applies when an alien is held or confined against his will through coercion or threat, or in connection with a demand for payment.

Here, the district court could not plausibly conclude from the PSR that the aliens were detained against their will. It states that Aguayo-Galvez transported two aliens who paid more than $9,000 to be crossed into the United States and taken to a stash house. They were "extorted" $400 per person to be taken to the train station, as well as an additional $125 per person "to continue their stay at the stash house" after their "train tickets were

---

punishment, or damage to be inflicted in retribution for or conditionally upon some course").

cancelled on multiple occasions for unspecified reasons." The district court adopted the PSR's factual findings.

The Government argues that the district court properly applied § 2L1.1(b)(8)(A), based on *Marquez-Rendon*. In *Marquez-Rendon*, we affirmed the application of the enhancement "because the undocumented aliens were forced to pay an additional $500 if they wanted to *leave the residence*, or they would be returned to Mexico" involuntarily by the defendants. 405 F. App'x at 902 (emphasis added). These facts are consistent with our holding. Here, by contrast, the aliens were forced to pay an additional $525 per person if they wanted to be taken to the train station and "to *continue their stay* at the stash house." The record does not reflect that the aliens were required to make any payment before they were permitted to leave. Although the Government contends that the aliens were forced to pay to continue their stay at the stash house "but for the greater risk posed by apprehension and removal," this is insufficient to show involuntary detention under § 2L1.1(b)(8)(A)'s plain language.

Because the evidence was insufficient to prove by a preponderance of the evidence that the aliens were involuntarily detained through threats, coercion, or demands for payment, the district court clearly erred in applying the enhancement under § 2L1.1(b)(8)(A).

## B.    Harmless Error

Aguayo-Galvez argues that the Government cannot meet its heavy burden to show harmless error.

A Guidelines calculation error will not warrant remand for resentencing if it was "harmless—that is the error did not affect the district court's selection of the sentence imposed." *United States v. Richardson*, 676 F.3d 491, 511 (5th Cir. 2012) (quoting *Williams v. United States*, 503 U.S. 193, 203 (1992)). As the party seeking to uphold the sentence, the Government

bears the burden to demonstrate harmlessness. *See id.* "Establishing harmless error is a 'heavy burden' that requires proving that the 'sentence the district court imposed was not influenced in any way by the erroneous Guidelines calculation.'" *United States v. Alfaro*, 30 F.4th 514, 520 (5th Cir. 2022) (quoting *United States v. Ibarra-Luna*, 628 F.3d 712, 717, 719 (5th Cir. 2010)); *see also United States v. Redmond*, 965 F.3d 416, 420 (5th Cir. 2020) (citing *Ibarra-Luna*, 628 F.3d at 719) ("We consider whether a district court's sentence was influenced by its Guidelines calculations or based on independent factors.").

Our circuit recognizes two ways by which the Government may show that a Guidelines error was harmless. *United States v. Guzman-Rendon*, 864 F.3d 409, 411 (5th Cir. 2017). "One is to show that the district court considered both ranges (the one now found incorrect and the one now deemed correct) and explained that it would give the same sentence either way." *Id.* Under the second approach, the Government must "convincingly demonstrate[ ] both (1) that the district court would have imposed the same sentence had it not made the error, and (2) that it would have done so for the same reasons it gave at the prior sentencing." *Id.* (alteration in original) (quoting *Ibarra-Luna*, 628 F.3d at 714). Because the record in this case reflects that the district court did not consider both Guideline ranges, the Government must "convincingly demonstrate" that both parts of the second approach have been met. *See id.* (citation modified).

After explaining why it found appropriate a sentence at the bottom of the Guidelines range the PSR had calculated, the district court here stated that to the extent the applicable Guidelines were incorrectly calculated, it "would have imposed the same sentence without regard to the applicable Guideline[s] [r]ange in light of the [§ 3553(a)] factors[.]" "[I]t is not enough for the district court to say the same sentence would have been imposed but for the error. 'The [G]overnment must point to evidence in the record that

convincingly demonstrates the district court would impose the *same* sentence for the *same* reasons.'" *United States v. Ritchey*, 117 F.4th 762, 767–68 (5th Cir. 2024) (first alteration in original) (quoting *United States v. Tanksley*, 848 F.3d 347, 353 (5th Cir.), *supplemented*, 854 F.3d 284 (5th Cir. 2017)); *see also Richardson*, 676 F.3d at 511 (quoting *Ibarra-Luna*, 628 F.3d at 717–18) (noting that the Government must "point to evidence in the record that will convince [us] that the district court had a particular sentence in mind and would have imposed it, notwithstanding the error").

In *Tanksley*, the district court made a statement substantially similar to the one made in this case: "'[e]ven if the [G]uideline calculations are not correct, this is the sentence the Court would otherwise impose under 18 U.S.C. § 3553.'" 848 F.3d at 353. But because the district court expressly adopted the probation officer's Guidelines calculation and pointed out that the sentence it was imposing was at the bottom of the Guidelines range, we were unconvinced that the within-Guidelines sentence had nothing to do with its Guidelines calculation. *Id.*; *see also Ritchey*, 117 F.4th at 767–68 (quoting *Tanksley*, 848 F.3d at 353) (holding that the district court's statements that it "considered the advisory sentencing guideline computations" and that it found "a sentence of 60 months to be appropriate *as the guideline sentence*" suggested it chose a within-Guidelines sentence partly based on the incorrect Guidelines calculation, even though the court stated it would impose the same sentence).

And in *United States v. Martinez-Romero*, 817 F.3d 917, 925 (5th Cir. 2016) (per curiam), the district court stated *three times* that even if its application of a sentencing enhancement was incorrect, "'it would nonetheless impose the same 46-month sentence.'" Specifically referencing the defendant's extensive criminal history as well as the § 3553(a) factors, the district court stated that the defendant's prior conduct was sufficient to justify a sentence within the incorrect Guidelines range of 46–57 months, and

it sentenced him to the lowest end. *Id.* We concluded that the district court was influenced by an erroneous Guidelines calculation because it (1) selected a sentence that "coincide[d] with the lowest end of the improperly calculated [G]uideline[s] range"; and (2) "expressly stated that [the defendant's] prior conduct was 'sufficient to justify a sentence within [the erroneous Guidelines range].'" *Id.* (first citing *United States v. Cardenas*, 598 F. App'x 264, 269 (5th Cir. 2015) (Smith, J.) (holding that an error was not harmless when the district court chose the lowest end of the improper sentencing range after stating that even if its Guidelines calculation was incorrect, it believed it "necessary to sentence at this very high range"); and then citing *United States v. Vasquez–Tovar*, 420 F. App'x 383, 384 (5th Cir. 2011) (per curiam) (explaining that the district court's imposition of a sentence at the bottom of the Guidelines range resulting from an erroneous enhancement suggested "the [G]uidelines error did affect the sentence in some way")).

Finally, in *United States v. Rico-Mejia*, 859 F.3d 318, 324 (5th Cir. 2017), *overruled by United States v. Reyes-Contreras*, 910 F.3d 169 (5th Cir. 2018), we noted the facts were similar to those in *Martinez-Romero* in that "[b]oth cases involve: (1) sentences that correspond precisely to the bottom of an erroneous [G]uidelines calculation; (2) statements by the district court regarding criminal history and willingness to impose sentences regardless of error in [G]uideline[s] calculation." But the district court further stated that it had considered "everything else about this case," and the defendant had included the allegedly correct Guidelines calculation in his objection to the PSR. *Id.* We found this distinction unpersuasive "in light of the district court's choice to impose a sentence that corresponded precisely to the bottom of the erroneous [G]uidelines range, which constitutes evidence that the range impacted the district court's decision." *Id.* at 324–25.

Here, after adopting the incorrect Guidelines calculation in the PSR, the district court likewise imposed a sentence at the lowest end. Its reference

to specific sentencing factors, including the nature of the offense and Aguayo-Galvez's criminal history, was part of its explanation for why it found a sentence at the bottom of the incorrect Guidelines range appropriate. Despite the general statement that it would impose the same sentence based on the § 3553(a) factors even if its Guidelines calculation was incorrect, the record reflects no independent factors or explanation for the sentence the court imposed. *See Redmond*, 965 F.3d at 420.[3] The Government identifies no convincing evidence showing the district court had a particular sentence in mind and would have imposed it regardless of the error. *See Richardson*, 676 F.3d at 511. As in *Tanksley*, *Martinez-Romero*, and *Rico-Mejia*, we are unpersuaded by the record that the "sentence the district court imposed was not influenced in any way by the erroneous Guidelines calculation." *Ibarra–*

---

[3] *See*, *e.g.*, *United States v. Scott*, 70 F.4th 846, 863 (5th Cir. 2023) (finding harmless error where the district court "unequivocally stated that, even if the cross-reference did not apply, it 'would have granted an upward variance resulting in the same sentence'" and "amply explained" why it would have imposed the same sentence); *United States v. Reyna-Aragon*, 992 F.3d 381, 388 (5th Cir. 2021) (finding harmless error because the district court instructed the Government to present its sentencing argument without reference to the incorrect Guidelines range, it discussed its independent reasons for selecting the sentence within the incorrect Guidelines range, and it expressly stated it would have imposed the same sentence despite any error based on the defendant's criminal history); *Redmond*, 965 F.3d at 420–21 (finding clear from the sentencing transcript that the court's sentence was based on "independent factors" because, before hearing argument or reaching any conclusions regarding the appropriate Guidelines calculation, the court stated it had "tentatively concluded that the defendant should receive a sentence significantly above the top of the advisory [G]uideline[s] range" considering the § 3553(a) factors and that it was selecting the sentence "without regard to what the advisory [G]uideline[s] range might be"); *United States v. Castro-Alfonso*, 841 F.3d 292, 298–99 (5th Cir. 2016) (finding harmless error because the district judge did not "beat around the bush" or equivocate in imposing sentence and provided a "firm, plain, and clear" expression of why he would have imposed the same sentence regardless of any error by referencing a specific part of the record).

No. 25-50853

*Luna,* 628 F.3d at 719. Because the Government has not satisfied its heavy burden, the sentencing error was not harmless.

\*      \*      \*

We VACATE Aguayo-Galvez's sentence and REMAND for resentencing. The mandate shall issue forthwith.