# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

───────────

No. 13-20739

───────────

UNITED STATES OF AMERICA,

United States Court of Appeals
Fifth Circuit

**FILED**

October 15, 2015

Lyle W. Cayce
Clerk

Plaintiff - Appellee

v.

DEMI MISHEL MUNIZ, also known as Demi Mischel Muniz,

Defendant - Appellant

───────────────

Appeal from the United States District Court
for the Southern District of Texas

───────────────

Before BENAVIDES, CLEMENT, and HIGGINSON, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:

Demi Mishel Muniz was convicted by a jury of conspiracy to transport and conceal illegal aliens, during which offense the death of a person resulted. 8 U.S.C. § 1324(a)(1)(A)(ii), (a)(1)(A)(iii), (a)(1)(A)(v)(I), (a)(1)(B)(iv). She challenges the district court's imposition of (1) a six-level sentencing enhancement under U.S.S.G. § 2L1.1(b)(6) for intentionally or recklessly creating a substantial risk of death or serious bodily injury, and (2) a ten-level enhancement under U.S.S.G. § 2L1.1(b)(7) for causing another person's death. Because the district court's factual findings supporting these enhancements were not clearly erroneous, we affirm.

No. 13-20739

I.

The trial record supports the following facts. Muniz and a co-conspirator, Luis Aceituno, transported a group of illegal aliens from Houston to Los Angeles in a minivan in August 2010. Aceituno noticed before the trip began that one of the aliens, Juan Jimenez Tovar, appeared tired and was dragging his feet. Just before or during the trip, Muniz called Tovar's wife to ask for money. Later, Muniz again called Tovar's wife to inform her that Tovar appeared ill and might be dehydrated. Tovar's wife told Muniz to buy "serum," referring to a drink for Tovar, and explained that Tovar had diabetes and needed a specific type of insulin. Tovar's wife also asked that he be taken to a hospital.

During the journey, Tovar indicated that he was alternately hot and cold by taking his shirt off and putting it back on, and by asking Aceituno to lower and then raise the window. When Muniz stopped for gas and snacks, she bought water and Gatorade for Tovar. Later, after all of the passengers had fallen asleep, one passenger attempted to wake Tovar, but he was unresponsive. Muniz passed alcohol under Tovar's nose and felt for a pulse, but evidently felt none. She then called her cousin, who advised her to leave Tovar at a rest stop—which she did. Muniz testified that she believed Tovar to be dead at this time, although Aceituno testified that Tovar may still have been alive. The rest stop, at which Tovar's dead body was later found, was about four miles from an ambulance service. A trial witness testified that there were at least forty hospitals or medical facilities visible from the roadway along the route from Houston to where Tovar was abandoned.

Muniz never called 911 or any medical facility. The next morning, Muniz called Tovar's wife and told her that her husband was sick and had been left at an exit on Highway 40. During this phone call, Muniz explained that she did not help Tovar because she was transporting other aliens and "things could

go wrong for her, too." Tovar's wife repeatedly attempted to call Muniz back, but Muniz refused to talk to her.

Thomas Parsons, the forensic pathologist who performed an autopsy on Tovar, determined the cause of death to be "lobar pneumonia with other significant contributing factors of diabetic ketoacidosis and coronary artery disease." According to Parsons, insulin—which does not require a prescription and can be purchased at most pharmacies—would "have certainly helped alleviate the diabetic ketoacidosis" and "would have made it easier to facilitate treatment for the pneumonia." Moreover, he testified, "[a]lmost any medical clinic that could provide intravenous fluid support could also provide intravenous antibiotics." If Tovar had received both insulin and antibiotic therapy, Parsons opined, "he very possibly could have survived." At another point, Parsons testified that a person with untreated diabetes and pneumonia "would most likely improve" if he received treatment.

The jury found Muniz guilty of conspiring to transport, and to harbor, conceal, or shield from detection, one or more aliens. The jury also determined that the government had proved, beyond a reasonable doubt, that Muniz placed Tovar's life in jeopardy, and that Tovar died as a result of Muniz's conduct. After overruling objections to the enhancements Muniz challenges on appeal, the district court calculated a Sentencing Guidelines range of 97 to 121 months. Finding a below-Guidelines sentence adequate to address the factors to be considered under 18 U.S.C. § 3553(a), the district court sentenced Muniz to 85 months in prison, followed by a two-year term of supervised release. This appeal timely followed.

## II.

We review a district court's interpretation or application of the Sentencing Guidelines de novo, and its factual findings for clear error. *United Sates v. Nash*, 729 F.3d 400, 403 (5th Cir. 2013). Sentencing enhancements

No. 13-20739

must be proven "by a preponderance of the evidence." *United States v. Juarez*, 626 F.3d 246, 251 (5th Cir. 2010). "[I]n determining whether an enhancement applies, a district court is permitted to draw reasonable inferences from the facts, and these inferences are fact-findings reviewed for clear error as well." *United States v. Ramos-Delgado*, 763 F.3d 398, 400 (5th Cir. 2014) (quoting *United States v. Caldwell*, 448 F.3d 287, 290 (5th Cir. 2006)). A finding is not clearly erroneous unless it is implausible "in light of the record as a whole." *Id.* (citation omitted).

III.

Muniz first challenges the district court's imposition of a six-level sentencing enhancement under U.S.S.G. § 2L1.1(b)(6) for intentionally or recklessly creating a substantial risk of death or serious bodily injury. She argues that this enhancement was clearly erroneous because the general manner in which Muniz transported the aliens was not dangerous, and because Muniz was not aware of sufficient facts to put her on notice of the gravity of Tovar's illness. We disagree.

In deciding whether this enhancement should be applied, courts must "look at the specifics of the situation." *United States v. Mateo Garza*, 541 F.3d 290, 294 (5th Cir. 2008). As clarified by a recent amendment to the Guideline's commentary, § 2L1.1(b)(6) covers a "wide variety of" reckless conduct, including "abandoning persons in[] a dangerous or remote geographic area without adequate food, water, clothing, or protection from the elements." U.S.S.G. § 2L1.1(b)(6) cmt. 5 (2014).[1] The district court found that Muniz was

---

[1] This commentary was added after Muniz's sentencing. But we may take guidance from it because "[a]mendments to the guidelines and their commentary intended only to *clarify*, rather than effect substantive changes, may be considered even if not effective at the time of the commission of the offense or at the time of sentencing." *United States v. Anderson*, 5 F.3d 795, 802 (5th Cir. 1993) (citing U.S.S.G. § 1B1.11(b)(2) (1992)). The language quoted above was added to "clarify application of subsection (b)(6)" and "provide guidance for the

aware of several indications that Tovar needed medical care: that he appeared dehydrated, displayed symptoms of being alternately hot and cold, and was diabetic and needed a specific type of insulin.  It was plausible to conclude that Muniz's failure to get medical aid for Tovar under these circumstances placed him at substantial risk of death or serious injury.  Therefore, the district court did not clearly err in applying the six-level enhancement—especially as the jury specifically found that Muniz placed Tovar's life in jeopardy.

This holding does not conflict with our unpublished decision in *United States v. Gomez-Cortez*, 34 F. App'x 152 (5th Cir. 2002) (per curiam).  There, we reversed the district court's application of this enhancement (then captioned as U.S.S.G. § 2L1.1(b)(5)) because a passenger who died while being taken to California was not transported in a dangerous manner, and the mere fact that the defendant had been told that the decedent "looked ill" did not put her on notice that the passenger "could not travel at all."  *Gomez-Cortez*, 34 F. App'x 152, at *3.  Here, by contrast, Muniz was aware that Tovar was sick, dehydrated, diabetic, and needed insulin.  So as the district court concluded, *Gomez-Cortez* is distinguishable.

We also reject Muniz's challenge to the district court's application of a ten-level enhancement under U.S.S.G. § 2L1.1(b)(7) for causing Tovar's death.  Under our precedent, a district court properly applies this enhancement if the defendant's conduct is "a but-for cause of" a person's death.  *Ramos-Delgado*, 763 F.3d at 401–02 (rejecting a proximate causation requirement).  The relevant conduct can consist of omissions as well as affirmative actions.  *See* U.S.S.G. § 1B1.3(a)(1)(A) (providing that Guideline ranges shall be determined on the basis of "all acts and omissions committed . . . or willfully caused by the

---

courts."  U.S. Sentencing Guidelines Manual, Supp. to App'x C, Amend. 785, at 79–80 (U.S. Sentencing Comm'n 2014).

defendant"); *see United States v. Ramos-Ramos*, 425 F. App'x 280, 281–82 (5th Cir. 2011) (affirming enhancement under § 2L1.1(b)(7) partly because defendant did not supply aliens with adequate food and water during journey through Texas brush). Based on the medical expert testimony outlined above, the district court did not clearly err in finding that Muniz's failure to obtain medical help for Tovar was a but-for cause of Tovar's death. The plausibility of this finding is reinforced by the jury's specific determination that Muniz "died as a result of" Muniz's conduct.

Because the factual findings supporting the challenged enhancements were plausible in light of the entire record, the district court's judgment and sentence are AFFIRMED.