# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-40424

United States Court of Appeals
Fifth Circuit

**FILED**

December 27, 2016

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

versus

ARTURO MALDONADO-OCHOA

Defendant–Appellant.

Appeal from the United States District Court
for the Southern District of Texas

Before STEWART, Chief Judge, SMITH and DENNIS, Circuit Judges.
JERRY E. SMITH, Circuit Judge:

Arturo Maldonado-Ochoa appeals a sentence that includes an enhancement for "intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person." United States Sentencing Guidelines (U.S.S.G.) § 2L1.1(b)(6). The enhancement was for transporting unrestrained illegal aliens for an extremely short distance. Finding no error, we affirm.

No. 15-40424

I.

Border Patrol agents in an unmarked vehicle noticed a pickup going east on a levee road just north of the Rio Grande River, the Mexican border. The truck stopped, and a number of individuals emerged from the nearby brush. Some of them entered the truck's cab, while others climbed into its bed. Someone then covered the bed with a tarp. The agents immediately activated their lights and siren and approached the truck. The driver was "attempting to reverse" when the pickup came to a sudden stop and its occupants got out and fled into the brush. The agents gave chase and apprehended ten, all illegal aliens, including the driver, Maldonado-Ochoa. He later admitted that he was the driver and that, by driving the truck, he would have received free transportation "all the way to Minnesota, where [he] used to live."

Maldonado-Ochoa did not transport the aliens very far. One of them said that the truck "began to move" before a siren was heard and the vehicle came to a stop. The presentence report ("PSR") notes that the truck "appeared to be attempting to reverse before it stopped." The plea agreement states that the truck "started to move" before Maldonado-Ochoa and his passengers became aware of the agents. At the sentencing hearing, the government contended that "there was very limited movement, but there was movement."

Under the plea agreement, Maldonado-Ochoa pleaded guilty of one count of conspiracy to transport an illegal alien within the United States and two counts of transporting an illegal alien within the United States for the purpose of commercial advantage and private financial gain, in violation of 8 U.S.C. § 1324. In return, the government moved to dismiss the remaining counts and urged downward adjustments.

The PSR calculated a total offense level of 13: a base offense level of 12 per U.S.S.G. § 2L1.1(a)(3), a three-level enhancement for transporting

2

No. 15-40424

between 6 and 24 illegal aliens per U.S.S.G. § 2L1.1(b)(2)(A), and a two-level downward adjustment for acceptance of responsibility per U.S.S.G. § 3E1.1(a). Given a criminal history score of 16, the recommended guidelines range was 33 to 41 months of imprisonment, with a maximum of ten years.

At sentencing, the district court granted the government's motion for a two-level downward departure for early disposition under U.S.S.G. § 5K3.1. But the court also informed Maldonado-Ochoa that it was considering a Section 2L1.1(b)(6) enhancement for "intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person." The court observed that Maldonado-Ochoa had transported illegal aliens in the bed of his truck and that doing so "ordinarily warrant[s] that enhancement."

Defense counsel maintained that there was not "any type of significant movement," no one was injured, Maldonado-Ochoa had done "the safe thing" and stopped when the agents pulled him over, transporting adults in the bed of a truck is legal in Texas, and, for all Maldonado-Ochoa knew, he could have been transporting the aliens only a short distance (he had no idea how far he was going because he was just following directions as he received them). In response, the court said that there would have been more movement if the agents had not interceded, the legality of transporting adults in the bed of a truck has no bearing on whether the sentencing enhancement applies, transporting illegal aliens in the bed of a truck triggers a Section 2L1.1(b)(6) enhancement under Fifth Circuit precedent regardless of whether the aliens were harmed during the trip, and Maldonado-Ochoa's ignorance of where he was going makes him seem even more reckless, given that he had "no way of knowing . . . how far and what kind of roads he was going to travel."

The court decided to apply the enhancement, resulting in a guideline range of 33 to 41 months, then imposed a sentence of 37 months plus three

3

No. 15-40424

years of supervised release.  Without the Section 2L1.1(b)(6) enhancement, the range would have been 27 to 33 months.  On appeal, Maldonado-Ochoa challenges only that enhancement.

II.

We review a district court's interpretation of the Sentencing Guidelines *de novo.  United States v. Torres*, 601 F.3d 303, 305 (5th Cir. 2010) (per curiam).  Section 2L1.1(b)(6) applies, by its terms, where "the offense involved intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person."  The application notes provide,

> Reckless conduct to which the adjustment . . . applies includes a wide variety of conduct (e.g., transporting persons in the trunk or engine compartment of a motor vehicle; carrying substantially more passengers than the rated capacity of a motor vehicle or vessel; harboring persons in a crowded, dangerous, or inhumane condition; or guiding persons through, or abandoning persons in, a dangerous or remote geographic area without adequate food, water, clothing, or protection from the elements).

U.S.S.G. § 2L1.1, cmt. n.5.  Section 2L1.1(b)(6)'s expansive language "must be given some restrictive meaning."  *United States v. Solis-Garcia*, 420 F.3d 511, 516 (5th Cir. 2005).  Moreover, in applying that subsection, courts must engage in a "fact-specific inquiry."  *United States v. Mata*, 624 F.3d 170, 174 (5th Cir. 2010) (per curiam) (footnote and internal quotation marks omitted).  Accordingly, we have avoided creating bright-line rules for this provision.[1]

Maldonado-Ochoa posits that he should not be subject to the Section 2L1.1(b)(6) enhancement.  He concedes that "transporting unrestrained aliens

---

[1] *See, e.g., United States v. Mateo Garza*, 541 F.3d 290, 294–95 (5th Cir. 2008) (explaining that this circuit does not apply *per se* rules in Section 2L1.1(b)(6) cases); *United States v. Zuniga-Amezquita*, 468 F.3d 886, 889 (5th Cir. 2006) (stating that "a single, bright-line test is not necessarily appropriate for a guideline that must be applied to a wide variety of factual settings.").

in the bed of a pickup truck may create a risk of injury or even death, thus qualifying for a § 2L1.1(b)(6) enhancement," but he reasons that because he drove the passengers only a *de minimis* distance at a *de minimis* speed before being promptly stopped by Border Patrol agents, he never subjected the aliens to "a substantial risk of death or serious bodily injury."

We disagree.  The moment Maldonado-Ochoa started to drive with unrestrained persons lying in the bed of his truck, he subjected them to a substantial risk of death or serious bodily injury.

We have repeatedly held that the Section 2L1.1(b)(6) enhancement is appropriate where the defendant transported unrestrained aliens in the bed of a pickup truck.  The logic is straightforward:  Transporting anyone in the bed of a pickup is inherently dangerous.  The leading case is *United States v. Cuyler*, 298 F.3d 387 (5th Cir. 2002), in which the defendant was driving on an interstate with four illegal aliens in the bed of his pickup.  We held that Section 2L1.1(b)(6) applied because the aliens "easily could have been thrown from the truck and almost certainly would have been injured in the event of an accident."  *Id.* at 390.  Though the defendant was driving on a highway, in recent years we have interpreted the holding to apply any time a defendant transported unrestrained aliens in a pickup bed that was not covered by a camper shell.[2]  In fact, on at least ten occasions we have affirmed a district court's decision to apply the enhancement against a defendant caught

---

[2] *See United States v. Romero*, 328 F. App'x 300, 301 (5th Cir. 2009) (per curiam) (quoting *United States v. Angeles-Mendoza*, 407 F.3d 742, 751 (5th Cir. 2005)) ("*Cuyler* 'dictates that the [Section 2L1.1(b)(6)] adjustment is appropriate where the smuggled aliens are transported in the bed of a pickup truck.'"); *United States v. Guevara-Hernandez*, 251 F. App'x 859, 860 (5th Cir. 2007) (per curiam) ("Transporting aliens in the bed of a pickup truck creates a substantial risk of death or serious bodily injury."); *Angeles-Mendoza*, 407 F.3d at 751 ("[T]he [Section 2L1.1(b)(6)] adjustment is appropriate where the smuggled aliens are transported in the bed of a pickup truck.").

No. 15-40424

transporting unrestrained aliens in a pickup bed without a camper shell.[3]

Maldonado-Ochoa urges us to carve out an exception to the *Cuyler* line of cases for defendants who, like him, have transported illegal aliens only a very short distance. But unfortunately for Maldonado-Ochoa, we have already encountered similar facts. In *Castro Mendoza*, 412 F. App'x at 709, we upheld the application of Section 2L1.1(b)(6) against a defendant who was caught driving a pickup truck with unrestrained aliens in the bed, even though, as acknowledged in the defendant's brief, he drove just two miles and at a slow rate of speed. Likewise, in *Romero*, 328 F. App'x at 301, we held that Section 2L1.1(b)(6) applied against a defendant who had driven her pickup a relatively short distance at slow speeds. To trigger the enhancement, a defendant who drives a truck with unrestrained aliens lying in the bed does not need to be driving at high speeds for long periods. Any distance or elapsed time can be viewed, in the context of all the facts, as putting those persons at "substantial risk of death or serious bodily injury."[4]

---

[3] *United States v. Magallan-Rodriguez*, 530 F. App'x 318, 322 (5th Cir. 2013) (per curiam); *United States v. Nino*, 482 F. App'x 920, 922 (5th Cir. 2012) (per curiam); *United States v. Castro Mendoza*, 412 F. App'x 708, 709 (5th Cir. 2011) (per curiam); *Romero*, 328 F. App'x at 301; *United States v. Diaz-Resendez*, 263 F. App'x 425, 428 (5th Cir. 2008); *Guevara-Hernandez*, 251 F. App'x at 860; *United States v. Teran*, 236 F. App'x 82, 84 (5th Cir. 2007) (per curiam); *Angeles-Mendoza*, 407 F.3d at 751; *United States v. Garza*, 97 F. App'x 487, 488 (5th Cir. 2004) (per curiam); *Cuyler*, 298 F.3d at 390–91.

Once this court did hold that the Section 2L1.1(b)(6) enhancement should not apply to a defendant who transported unrestrained aliens in the back of a pickup. But in that case, the truck's bed was covered by a camper shell, which would have prevented the aliens from being thrown out of the truck in an accident. *United States v. Pineda-Jimenez*, 212 F. App'x 369, 373 (5th Cir. 2007). In *United States v. Trujillo-Reyes*, 318 F. App'x 286, 288 (5th Cir. 2009) (per curiam), however, we determined that a defendant who drove a pickup at high speeds over a long distance with unrestrained illegal aliens in the bed was subject to the enhancement, even though the truck bed was covered by a camper shell.

Regardless of those decisions, the bed of the truck Maldonado-Ochoa was driving was covered with a tarp, not a camper shell. Covering a truck bed with a tarp does not protect the aliens who are lying underneath it. *Angeles-Mendoza*, 407 F.3d at 751 n.16.

[4] Maldonado-Ochoa also claims that because of the brevity of his trip, he did not

No. 15-40424

The only real difference between Maldonado-Ochoa and the defendants in previous cases involving unrestrained illegal aliens lying in pickup truck beds is that Maldonado-Ochoa happened to get caught immediately. Had the agents not been there, it is plausible that he would have driven the truck a considerable distance. We know that at least two of the aliens were bound for Houston, 345 miles to the north. It is possible that Maldonado-Ochoa would have driven only part of the way before arriving at a stash house or some other rendezvous point. But it is a stretch to claim, as defense counsel did at sentencing, that Maldonado-Ochoa "could have been . . . just going around the block."

This court has consistently held that Section 2L1.1(b)(6) applies against defendants who have transported unrestrained aliens in a pickup truck bed that was not covered with a camper shell. Although avoiding the temptation to impose a bright-line rule, and cognizant that we look to the specific facts of each case involving this enhancement, *see* note 2, *supra*, we recognize no blanket exception for defendants who are caught early in their journeys. The high risk of serious injury or death remains.

AFFIRMED.

---

"transport" the aliens "in any meaningful sense." We reject that notion. Maldonado-Ochoa pleaded guilty of a crime that includes "transport or move" in its definition. 8 U.S.C. § 1324(a)(1)(A)(ii). He told the district court that he agreed with the plea agreement's recital of facts, which says that he "transported or moved" at least one illegal alien. "Move" and "transport" are synonyms, and there is no reason to believe that "transport" should have a special, more restrictive meaning in this context. *See, e.g.*, *Gloucester Ferry Co. v. Pennsylvania*, 114 U.S. 196, 203 (1885) ("Transportation implies the taking up of persons or property at some point and putting them down at another."); BLACK'S LAW DICTIONARY 1729 (10th ed. 2014) (defining "transportation" as "movement of goods or persons from one place to another by a carrier."); 18 OXFORD ENGLISH DICTIONARY 423 (2d ed. 1989) (defining "transport" as "[t]o carry, convey, or remove from one place or person to another; to convey across.").

No. 15-40424

JAMES L. DENNIS, Circuit Judge, dissenting:

The majority opinion holds that an offense that consisted of stopping a pickup truck, loading undocumented immigrants into the cab and bed of the truck, and "attempting to reverse" before stopping the truck involved "intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person." The fact that convinces the majority that risk of serious injury or death was present in this case is the fact that, had he not been caught by law enforcement, Maldonado-Ochoa could have driven the truck "a considerable distance." Slip op. at 7. Because the majority opinion fails to consider whether a substantial risk was actually created in the course of Maldonado-Ochoa's particular offense, as our precedent requires, I respectfully dissent.

Fifth Circuit precedent provides that "[t]he contours of [the § 2L1.1] sentencing enhancement depend on a careful application of the guidelines on a case-specific basis" and its application "requires a fact-specific inquiry." *United States v. Zuniga-Amezquita*, 468 F.3d 886, 888-89 (5th Cir. 2006). We have explained that "a substantial risk requires a strong probability that the event . . . will occur." *Rodriguez v. Holder*, 705 F.3d 207, 213 (5th Cir. 2013); *see also United States v. Lackey*, 617 F. App'x 310, 314 (5th Cir. 2015) (citing *Rodriquez* in the context of sentencing enhancements). In *United States v. Cuyler*, 298 F.3d 387, 391 (5th Cir. 2002), the first Fifth Circuit case to consider the application of § 2L1.1 to the transportation of persons in the bed of a pickup, we clarified that "the issue is whether *this particular offense* 'intentionally or recklessly creat[ed] a substantial risk of death or serious bodily injury to another person.'" (Emphasis added, alteration in original).

The relevant caselaw demonstrates how a fact-specific analysis should unfold. In *Cuyler*, we considered the application of the § 2L1.1 enhancement

8

to an offense that involved driving undocumented immigrants on the highway in the bed of a pickup. *Id.* at 388-89. Before concluding that the enhancement properly applies "to the smuggling of aliens in the bed of a pickup truck while driving on the highway," we observed that "[a]liens who are unrestrained easily can be thrown from the bed of the pickup in the event of an accident or other driving maneuver of the sort that is unavoidable in highway driving." *Id.* at 391. In other words, we analyzed the risks inherent in the activity actually engaged in to determine whether the offense "involved intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person." § 2L1.1(b)(6).

In *United States v. Angeles-Mendoza*, 407 F.3d 742, 751 (5th Cir. 2005), we stated that *Cuyler* "dictates that the adjustment is appropriate where the smuggled aliens are transported in the bed of a pickup truck." However, a closer review of that opinion reveals that we did not simply apply a per se rule. Rather, we examined the facts of the offense and concluded, "Over the long distances that the aliens were transported in this operation, there existed the similar, substantial risk that the aliens might 'be thrown from the bed of the pickup in the event of an accident or other driving maneuver of the sort.'" *Id.* at 751 n.17 (quoting *Cuyler*, 298 F.3d at 391). And in *United States v. Mendoza*, 412 F. App'x 708, 709 (5th Cir. 2011), we held that the appellant "ha[d] not shown his case to be distinguishable from *Cuyler*" because, "[a]lthough [he] traveled only a short distance[1] with the unsecured aliens, the potential for an accident still existed."

---

[1] It is not clear exactly how far the defendant traveled in *Mendoza*. However, the PSR's description of the route taken by the defendant reveals that the distance travelled was more than de minimis. *See* PRS at 3-4, *United States v. Mendoza*, No. 2:09-cr-00737-AM (W. D. Tex., 2010).

No. 15-40424

In this case, the potential for an accident did not exist.  The Government has the burden of proving by a preponderance of the evidence the facts necessary to support the § 2L1.1(b)(6) enhancement. *United States v. Rodriguez*, 630 F.3d 377, 380 (5th Cir. 2011).  Yet while the Government's brief states that "the risk of harm to an unsecured person travelling any distance in the bed of a pickup truck is inherent due to the possibility of an accident or other injury," the Government did not attempt to show that a substantial risk of death or serious bodily injury is created when a vehicle merely "attempt[s] to reverse."  The majority opinion's theory that, "[h]ad the agents not been there, [Maldonado-Ochoa] would have driven the truck a considerable distance," slip op. at 7, is irrelevant: our precedent requires us to look at the offense as it was committed, not as it might have been.  *See Cuyler*, 298 F.3d at 391.

As explained above, "a substantial risk requires a *strong probability* that the event . . . will occur." *Rodriguez*, 705 F.3d at 213 (emphasis added).  The undisputed factual record states that the truck "appeared to be attempting to reverse before it stopped," but that "as the vehicle started to move, agents activated emergency lights and were able to stop the vehicle."  Such minimal movement simply does not create a "strong probability" that death or serious bodily injury will result.

Maldonado-Ochoa's actual offense did not involve intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person.  In direct contradiction of our precedent, the majority opinion reaches a contrary result by imagining how a risk could have manifested under different circumstances rather than by looking at the facts of the offense itself. I respectfully dissent.