# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
July 15, 2020

No. 19-40603

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

 Plaintiff - Appellee

v.

LOUIS LUYTEN,

 Defendant - Appellant

_____

Appeal from the United States District Court
for the Southern District of Texas

_____

Before WIENER, ENGELHARDT, and OLDHAM, Circuit Judges.

KURT D. ENGELHARDT, Circuit Judge:

Louis Luyten pleaded guilty to conspiracy to transport undocumented aliens within the United States by means of an aircraft. The district court sentenced Luyten to 33 months of imprisonment and three years of supervised release. Luyten appeals his sentence, arguing that the district court erroneously enhanced his offense level under United States Sentencing Guidelines (U.S.S.G.) § 2L1.1(b)(6) for recklessly creating a substantial risk of death or serious bodily injury. We AFFIRM.

No. 19-40603

## I.

Luyten pleaded guilty, with the benefit of a plea agreement, to conspiracy to transport undocumented aliens within the United States, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii), (a)(1)(A)(v)(I), and (a)(1)(B)(i)—count one of a five-count indictment. As detailed in the indictment and factual basis, on or about November 4, 2018, Luyten conspired to transport illegal aliens by aircraft from one part of Texas to another in furtherance of their unlawful presence in the United States. Luyten admitted that he knew his passengers were illegally in the United States and that he was paid $3,000 to fly them from Weslaco to Houston.

According to the Presentence Investigation Report (PSR), Luyten transported undocumented aliens in an aircraft on at least three other occasions prior to his arrest (August 20, 2018; August 23, 2018; and August 25, 2018), during which he transported a total of eleven aliens in exchange for financial gain. Luyten was apprehended on November 4, 2018, at the Mid-Valley Airport in Weslaco, Texas, as he was attempting to take-off in a 1978 Mooney M20K aircraft transporting four additional undocumented aliens from Guatemala, Honduras, and El Salvador.

The PSR determined that Luyten recklessly created a substantial risk of death or serious bodily injury to another person when he transported five persons (four undocumented aliens and himself) in an aircraft with a seating capacity of four, while his pilot's license was revoked. The PSR identified three separate trips, including the November 2018 incident, where Luyten piloted an aircraft that carried passengers in excess of the authorized seating capacity of four. The PSR also stated that Luyten, age 81, was transporting these aliens without a pilot's license, which had been permanently revoked in connection with his drug conviction in 2007—approximately eleven years prior to the instant offense. Based on these reasons, the PSR applied the reckless

No. 19-40603

endangerment enhancement and increased Luyten's base offense level to 18 (an effective increase of 3 levels)[1] pursuant to U.S.S.G. § 2L1.1(b)(6).

Additionally, the PSR applied a two-level adjustment for use of a special skill and accounted for a three-level decrease for acceptance of responsibility, resulting in a projected total offense level of 17. As calculated in the PSR addendum, Luyten's total offense level of 17 and criminal history category of III yielded a Guideline imprisonment range of 30–37 months.

Luyten filed written objections to the PSR, challenging, *inter alia*, the applicability of the reckless endangerment enhancement. He argued that the enhancement was improper because the plane never took off and claimed that he could not create a substantial risk of death or serious bodily injury because he possessed special skills as a pilot.[2] At sentencing, Luyten reurged his objection, emphasizing that he had served honorably as a colonel in the NATO Air Force, had taught at various schools as a flight instructor, and was a competent and skilled pilot. Thus, he asserted there was no risk of death or serious bodily injury.

The district court overruled Luyten's objection to the enhancement under U.S.S.G. § 2L1.1(b)(6). The court found the reckless endangerment enhancement proper because Luyten transported more people in the airplane than its seating capacity, which affected the safety and weight of the aircraft.

---

[1] In accordance with the 2018 U.S.S.C. Guidelines Manual, the probation officer began with a base offense level of 12, U.S.S.G. § 2L1.1(a)(3), which was increased by three levels based on the number of unlawful aliens the defendant transported, § 2L1.1(b)(2)(A).

[2] In response, the United States Probation Office disagreed with Luyten's objection and maintained that the enhancement was warranted for the following reasons: (1) Luyten transported aliens in an airplane "loaded with one extra passenger" in excess of the four person seating capacity on multiple occasions, including his attempt to transport an additional four aliens on November 4, 2018; (2) Luyten, who is 81 years old, was operating the aircraft with a revoked license (revoked in 2007); (3) Luyten was in his 80s and "vision begins to deteriorate as we get older"; and (4) Luyten reported difficulty sleeping due to pain associated with a rotator cuff tear, resulting in surgery one month after his August 2018 flights.

No. 19-40603

Applying an additional one level downward departure for early disposition but otherwise adopting the PSR, the court determined the revised Guideline range to be 27–33 months and sentenced Luyten (within that range) to 33 months of imprisonment, followed by three years of supervised release. Luyten appealed.

On appeal, Luyten renews his objection to the district court's application of the reckless endangerment enhancement under § 2L1.1(b)(6). According to Luyten, the enhancement was improper because it was based, not on specific facts showing the aliens were in danger, but instead on the fact that Luyten transported five persons in an aircraft with a seating capacity of four, while his pilot's license was revoked. This is insufficient for the enhancement, he asserts, because the Guidelines make clear that the enhancement does not apply when only one extra passenger is present, but rather applies when there are substantially more passengers than the rated capacity of the vehicle and there was no evidence that the aliens were unsafe or adversely affected the weight of the plane. Additionally, Luyten argues there was no endangerment because he was an expert pilot with years of training and experience and claims his license was revoked because of his criminal conviction, not for any reason related to his ability as a pilot.

## II.

We review the district court's application of the Sentencing Guidelines de novo and its factual findings for clear error. *United States v. Muniz*, 803 F.3d 709, 712 (5th Cir. 2015). In determining whether an enhancement applies, the district court may draw reasonable inferences from the facts, and we credit these inferences absent clear error. *Id.* "A finding is not clearly erroneous unless it is implausible in 'light of the record as a whole.'" *Id.* (quoting *United States v. Ramos-Delgado*, 763 F.3d 398, 400 (5th Cir. 2014)). "The government must prove sentencing enhancements by a preponderance of the evidence." *United States v. Juarez*, 626 F.3d 246, 251 (5th Cir. 2010). We may affirm on

4

No. 19-40603

any ground supported by the record. *United States v. Chacon*, 742 F.3d 219, 220 (5th Cir. 2014).

### III.

Pursuant to U.S.S.G. § 2L1.1(b)(6), a defendant's base offense level for smuggling, transporting, or harboring an unlawful alien is increased if the offense "involved intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person." U.S.S.G. § 2L1.1(b)(6) (2018). The enhancement results in a two-level increase, unless the resulting offense level is less than level 18, then the offense level is increased to 18. *Id.*

Section 2L1.1(b)(6) "covers a 'wide variety of [reckless] conduct[.]'" *Muniz*, 803 F.3d at 712 (quoting now-U.S.S.G. § 2L1.1 cmt. n.3). The Guideline commentary's application notes provide four examples of conduct warranting the reckless-endangerment enhancement:

> [1] transporting persons in the trunk or engine compartment of a motor vehicle;
> [2] carrying substantially more passengers than the rated capacity of a motor vehicle or vessel;
> [3] harboring persons in a crowded, dangerous, or inhumane condition; or
> [4] guiding persons through, or abandoning persons in, a dangerous or remote geographic area without adequate food, water, clothing, or protection from the elements.

U.S.S.G. § 2L1.1 cmt. n.3.

These examples are illustrative and non-exhaustive. *See United States v. Zuniga-Amezquita*, 468 F.3d 886, 888 (5th Cir. 2006) ("[T]his guideline is not limited to the examples provided in the commentary."). A "single, bright-line test is not necessarily appropriate" because the § 2L1.1(b)(6) enhancement "must be applied to a wide variety of factual settings." *Id.* at 889; *see also United States v. Mata*, 624 F.3d 170, 174 (5th Cir. 2010). Accordingly, the "contours of this sentencing enhancement depend on a careful application of

the guidelines on a case-specific basis." *Zuniga-Amezquita*, 468 F.3d at 888 (citing *United States v. Solis-Garcia*, 420 F.3d 511, 516 (5th Cir. 2005)). "[T]he relevant inquiry focuses on whether the defendant's conduct 'pose[d] inherently dangerous risks to the aliens being transported.'" *United States v. Ruiz-Hernandez*, 890 F.3d 202, 212 (5th Cir. 2018) (quoting *Solis-Garcia*, 420 F.3d at 516). "The actual results of the defendant's conduct are irrelevant." *Id.*

Although we have not previously applied a U.S.S.G. § 2L1.1(b)(6) enhancement in this particular context, we conclude that the enhancement was warranted in this case.[3] Luyten's decision to fly more passengers aboard a small airplane than it was rated to carry, without a valid pilot's license (which had been revoked for over a decade), posed an inherently dangerous risk of death or serious bodily injury to the aliens he transported. Luyten made multiple trips transporting aliens in excess of the airplane's seating capacity and without a valid pilot's license. Although there was only one additional

[3] Although this case is distinguishable in that Luyten piloted an airplane to transport the aliens, our case law is consistent with our affirmance of the instant enhancement. We have repeatedly held that the § 2L1.1(b)(6) enhancement is appropriate where the defendant transported unrestrained aliens in a bed of a pickup truck. *See, e.g.*, *United States v. Cuyler*, 298 F.3d 387, 391 (5th Cir. 2002) (reasoning that the defendant created a substantial risk of death or serious bodily injury to the unrestrained passengers because they "easily can be thrown from the bed of the pickup in the event of an accident or other driving maneuver of the sort that is unavoidable in highway driving"); *United States v. Maldonado-Ochoa*, 844 F.3d 534, 537 (5th Cir. 2016) (collecting cases). Additionally, we have upheld the enhancement when the aliens were transported in a manner that significantly hindered their ability to exit the vehicle and posed a great risk of injury in the event of an accident. *See Zuniga-Amezquita*, 468 F.3d at 890 (affirming the enhancement when the defendant transported aliens in the cargo area of a van, surrounded by luggage and stacked boxes containing bottles of beer, reasoning that the boxes and luggage piled to the ceiling of the vehicle impeded the aliens' ability to exit the vehicle quickly and posed a greater risk of injury in the event of an accident). *But see Solis-Garcia*, 420 F.3d at 516 (concluding that the reckless endangerment enhancement does not apply to a defendant transporting illegal aliens in the cargo area of a minivan who are not wearing seatbelts without proof of additional aggravating factors).

passenger over the airplane's seating capacity of four, that passenger was necessarily unrestrained.[4]

It can reasonably be inferred that an unrestrained passenger aboard a small airplane experiencing turbulence faces a substantial risk of serious bodily injury, or even death. The risk to an unrestrained passenger on an airplane is substantially heightened in the event of an accident or crash. *See Zuniga-Amezquita*, 468 F.3d at 889 (The "danger to [the aliens] if an accident occurs" is a factor to consider in applying § 2L1.1(b)(6).). Further, an additional reasonably foreseeable risk associated with flying with one passenger over capacity, as discussed by the district court, is the potential effect on the weight of the airplane. "[T]he enhancement applies for creating a *risk* of harm; no harm at all need actually occur to warrant its application." *Ruiz-Hernandez*, 890 F.3d at 212; *see also United States v. Maldonado-Ochoa,* 844 F.3d 534, 537 (5th Cir. 2016) (affirming the application of § 2L1.1(b)(6) where the defendant "started to drive with unrestrained persons lying in the bed of his truck," even though he was pulled over as soon as his vehicle began to move and no one was injured).

Luyten's argument to the contrary is unavailing. Luyten asserts that the enhancement cannot be justified by the fact that he flew the airplane with just one person over the rated capacity because the Guideline only applies when there are substantially more passengers than the rated capacity. Luyten's interpretation is mistaken. "The application of § 2L1.1(b)(6) requires a fact-specific inquiry because . . . [it] is intended to apply to a wide variety of conduct." *Mata*, 624 F.3d at 174; *accord Maldonado-Ochoa*, 844 F.3d at 537 (stating that "because courts must engage in a 'fact-specific' inquiry . . . we

---

[4] The FAA requires all passengers two years or older on board a commuter airplane to have their own "approved seat or berth with a separate safety belt properly secured about him or her during movement on the surface, takeoff, and landing." 14 C.F.R. § 135.128(a).

have avoided creating bright-line rules for this [guideline]"). The commentary lists as an *example* of reckless conduct to which the adjustment applies, "carrying substantially more passengers than the rated capacity of a motor vehicle or vessel." U.S.S.G. § 2L1.1 cmt. n.3. However, the "examples are not *per se* rules," but require courts to consider the "specifics of the situation." *United States v. Mateo Garza*, 541 F.3d 290, 294 (5th Cir. 2008). Here, it is relevant that airplanes present distinct risks and dangers to passenger safety.

Moreover, Luyten—age 81—was flying an airplane that exceeded the passenger capacity without a pilot's license, which had been permanently revoked by the Federal Aviation Administration in 2007—approximately *eleven years* prior to the instant offense. The requirements for maintaining an airman certificate (pilot's license) are in place to ensure a pilot's competency and ongoing fitness to operate a plane safely.[5] *See generally Ventress v. Japan Airlines*, 747 F.3d 716, 721 (9th Cir. 2014) (Aviation safety, including "pilot qualifications and medical standards for airmen," is "pervasively regulated" by the FAA.). Airman certificates are only issued to individuals who are determined to be "qualified and physically able to perform the duties related to the certified position." *Id.* Operating an aircraft without satisfying the licensure requirements further compounds the substantial risk of serious injury or death to the passengers.

Here, the aliens were transported on a small aircraft in excess of the seating capacity flown by Luyten who had not held a valid pilot certificate for eleven years. The totality of these specific facts and reasonable inferences supports the conclusion that the manner in which Luyten transported these

---

[5] A pilot must have an authorized pilot certificate to operate an aircraft in the United States. *See* 14 C.F.R. § 61.3(a). To ensure pilots are physically able to perform their duties, 14 C.F.R. § 61.3(c) requires that a pilot hold a medical certificate in addition to a pilot certificate. Luyten concedes that he has not held a valid pilot's license in the United States since it was revoked in 2007.

aliens involved "inherently dangerous practices that produce[d] substantial risks of death or serious bodily injury," which is precisely the conduct the enhancement is intended to punish. *Solis-Garcia*, 420 F.3d at 516.

## IV.

Because the offense involved recklessly creating a substantial risk of death or serious bodily injury to another person, the district court did not err in its imposition of the sentencing enhancement under U.S.S.G. § 2L1.1(b)(6). Accordingly, the judgment of the district court is AFFIRMED.