# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 5, 2023

Lyle W. Cayce
Clerk

————————

No. 22-50092

————————

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

BRANDON COREY CUNNINGHAM,

*Defendant—Appellant*.

————————————————————

Appeal from the United States District Court
for the Western District of Texas
USDC No. 2:19-CR-2051-1

————————————————————

Before KING, JONES, and DUNCAN, *Circuit Judges*.

PER CURIAM:[*]

Brandon Cunningham was convicted of conspiring to transport illegal aliens and sentenced to 45 months in prison. On appeal, Cunningham argues his sentence was wrongly enhanced under U.S.S.G. § 2L1.1(b)(6) for intentionally or recklessly creating a substantial risk of death or serious bodily injury. We affirm.

————————————————

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

No. 22-50092

## I.

In the middle of the night on August 10, 2019, United States Border Patrol agents saw a Jeep Grand Cherokee pass by, abruptly turn around, and come to a stop near the agents. The agents made contact with the Jeep, identifying Cunningham as the driver and co-defendant Angel Alexander De Leon as the passenger. The agents observed that the Jeep's back seats were folded down flat and heard a cell phone ringing in the brush nearby. After one of the agents pointed a flashlight towards the ringing sound, De Leon took off running, while telling Cunningham to "run, motherf--ker, run." Cunningham remained seated and was detained.

Upon locating the ringing phone, the agents discovered "WhatsApp" messages with GPS coordinates to a location a few hundred yards away. They went there and found several people hunkered down in the brush. The people scattered once the agents identified themselves as Border Patrol. One woman, who admitted to being a Guatemalan citizen illegally present in the United States, was apprehended. And after a brief search, three more of the individuals—also illegal aliens—were apprehended. On the way to the Border Patrol station, the agents found De Leon walking along the road and placed him under arrest as well.

Border Patrol questioned the apprehended aliens, who all explained that they paid $3,000 to $5,000 each to be smuggled into the United States. Apparently, their foot guide had disappeared and abandoned the group alone in the brush. The group became lost and ran out of water, with one woman becoming ill and passing out. The investigation revealed that the group had not been in contact with the individuals who were going to pick them up and were unable to identify them. Eventually, though, agents located phone calls and text messages between Cunningham and De Leon, as well as between Cunningham and an unidentified individual—all of which referred to the

illegal alien smuggling venture. As it turns out, Cunningham was going to be paid $3,500 and De Leon $400 to drive the aliens to a Sonic restaurant in Uvalde, Texas.

Cunningham insisted on a jury trial. At trial, further details of the scheme came to light. De Leon testified that, on the day he and Cunningham were arrested, he had taken cocaine and Cunningham had consumed sleeping pills. He reported that when they pulled over to the side where they subsequently encountered the Border Patrol agents, they were supposed to switch drivers. The reason for this was that Cunningham had been swerving in the vehicle after taking the sleeping pills. The jury found Cunningham guilty.

The Presentence Investigation Report (PSR) assigned Cunningham a total offense level of 20, which included a six-point increase under U.S.S.G. § 2L1.1(b)(6). That provision calls for a sentencing enhancement when "the offense involved intentionally or recklessly creating a substantial risk of death or serious bodily injury." U.S.S.G. § 2L1.1(b)(6). The PSR explained that factors contributing to this designation included: the foot guide's disappearance; the group's running out of water and an alien's becoming ill; and the fact that De Leon and Cunningham were under the influence of cocaine and sleep medication, respectively. This yielded a guideline imprisonment range of 41 to 51 months.

Cunningham filed written objections to the PSR, which he re-urged at sentencing. He argued that the § 2L1.1(b)(6) enhancement should not apply because neither he nor his co-defendant caused the illegal aliens to run out of water or become ill. He also observed that he had taken only the sleep medication, not the cocaine. The district court overruled Cunningham's objections. While not disclaiming reliance on the other factors underlying the PSR's § 2L1.1(b)(6) enhancement, the court focused primarily on

Cunningham's "being under the influence and driving while intoxicated." Cunningham received a within-guidelines sentence of 45 months in prison, along with three years of supervised release.

Cunningham timely appealed.

## II.

"We review a district court's interpretation or application of the Sentencing Guidelines de novo, and its factual findings for clear error." *United States v. Muniz*, 803 F.3d 709, 712 (5th Cir. 2015). Any reasonable inferences drawn from these factual findings are reviewed for clear error as well. *United States v. Ramos-Delgado*, 763 F.3d 398, 400 (5th Cir. 2014). "Under the clearly erroneous standard, we will uphold a finding so long as it is plausible in light of the record as a whole." *Ibid.* (quoting *United States v. Ekanem*, 555 F.3d 172, 175 (5th Cir. 2009)). Sentencing enhancements must be proven by a preponderance of the evidence. *United States v. Luyten*, 966 F.3d 329, 332 (5th Cir. 2020). And "[w]e may affirm on any ground supported by the record." *Ibid.*

## III.

Section 2L1.1(b)(6) of the Sentencing Guidelines provides a two-level enhancement to the base offense level for smuggling, transporting, or harboring an illegal alien if the offense "involved intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person." U.S.S.G. § 2L1.1(b)(6). But where, as here, the resulting offense level is less than level 18, the offense level is increased to 18. *Ibid.*

The commentary to this guideline provides non-exhaustive and illustrative examples of conduct warranting the enhancement. *Luyten*, 966 F.3d at 333. These examples include:

[1] transporting persons in the trunk or engine compartment of a motor vehicle;

[2] carrying substantially more passengers than the rated capacity of a motor vehicle or vessel;

[3] harboring persons in a crowded, dangerous, or inhumane condition; or

[4] guiding persons through, or abandoning persons in, a dangerous or remote geographic area without adequate food, water, clothing, or protection from the elements.

U.S.S.G. § 2L1.1 cmt. n.3. Although the commentary and caselaw can provide useful examples such as these, this court has "avoided creating bright-line rules for this provision." *United States v. Maldonado-Ochoa*, 844 F.3d 534, 537 (5th Cir. 2016). This is because applying § 2L1.1(b)(6) "requires a fact-specific inquiry." *United States v. Mata*, 624 F.3d 170, 174 (5th Cir. 2010) (quoting *United States v. Zuniga-Amezquita*, 468 F.3d 886, 889 (5th Cir. 2006)). The provision is intended, after all, to apply to "a wide variety of conduct." *Ibid.* (quoting U.S. Sent'g Guidelines Manual § 2L1.1 cmt. 5 (U.S. Sent'g Comm'n 2009)). So, while we consider examples, we focus primarily on the "specifics of the situation." *United States v. Mateo Garza*, 541 F.3d 290, 294 (5th Cir. 2008).

Cunningham argues that the district court erred by adopting a *per se* rule that merely ingesting a sleep aid creates a substantial risk of death or serious bodily injury. He relies primarily on *Mateo Garza*, in which the district court "premised its ruling on the notion that transporting aliens through the brush necessarily and always involves subjecting them to a substantial risk of death or serious bodily injury." *Ibid.* Our court responded that it was "not enough to say . . . that traversing an entire geographical region is inherently dangerous." *Ibid.* Other facts, such as the heat, if

considered in tandem, may have justified the enhancement. *See id.* at 295. But because "[t]he court did not specifically base its sentence on those facts but instead on the very fact of traveling through the brush," our court found that relying on a single factor improperly created a *per se* rule, and so reversed. *Ibid.* Cunningham analogizes *Mateo Garza*'s logic to this case, arguing the district court inappropriately created a *per se* rule focused on his taking sleep aids to the exclusion of any other factor.

We disagree. The district court did not create a *per se* rule about sleep aids alone but rather considered that fact as applied to the specific contours of this case. *See United States v. Solis-Garcia*, 420 F.3d 511, 516 (5th Cir. 2005) ("Defining the contours of this enhancement is dependent upon carefully applying the words of the guideline in a case-specific analysis."). For example, the district court observed that, after Cunningham took the sleep aid, "he was starting to fall asleep and he was swerving on the road." In other words, the sleep aid actually had an effect on Cunningham, which resulted in his dangerous driving. *Cf. Begay v. United States*, 553 U.S. 137, 141 (2008) ("Drunk driving is an extremely dangerous crime."). What's more, contrary to Cunningham's suggestions, the district court did not disclaim reliance on other factors identified in the PSR—including the foot guide's disappearance, the aliens' running out of water, and an alien's becoming ill. The district court only stated that it was relying on the "driving while intoxicated *more than* anything" and that it was "not *so much* relying on" the other factors. It did not disclaim them altogether. Accordingly, we reject Cunningham's argument.

Cunningham further argues that there is insufficient evidence to suggest that his conduct created a substantial risk of death or serious bodily harm. He cites the PSR, which stated that "Cunningham began to fall asleep and was swerving on the road, and [the co-defendants] pulled over to the side where they were subsequently encountered by [Border Patrol] agents."

Cunningham suggests this is not enough because he "was not speeding, off-roading, fleeing . . . or the like." *United States v. Ramirez*, 37 F.4th 233, 237 (5th Cir. 2022) (finding an application of § 2L1.1(b)(6) to be improper). Nor were there illegal aliens in the Jeep at the time of the misconduct.

We again disagree. "The actual results of the defendant's conduct are irrelevant." *United States v. Ruiz-Hernandez*, 890 F.3d 202, 212 (5th Cir. 2018). What matters is the *risk* of harm, not actual harm. *Ibid.* ("[T]he enhancement applies for creating a *risk* of harm; no harm at all need actually occur to warrant its application."). But for the Border Patrol's intervention, Cunningham would have presumably continued to transport the illegal aliens to their destination while swerving and nodding off late at night. That Cunningham and De Leon intended to switch driving duties only adds to the risks; De Leon's driving would likely have been similarly impaired by his cocaine use. Accordingly, the district court did not clearly err in enhancing Cunningham's sentence under § 2L1.1(b)(6).

AFFIRMED.