# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 5, 2023

Lyle W. Cayce
Clerk

No. 22-60286

---

United States of America,

*Plaintiff—Appellee*,

*versus*

Samuel Wilson, III,

*Defendant—Appellant*.

---

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 1:19-CR-96-6

---

Before Higginbotham, Southwick, and Willett, *Circuit Judges*.

Per Curiam:[*]

A jury convicted Samuel Wilson, III, of conspiracy to possess with intent to distribute methamphetamine and marijuana, possession with intent to distribute marijuana, and possession of firearms by a felon. Wilson alleges the district court erred in not first qualifying a law enforcement witness as an expert before allowing him to testify about the meaning of slang words used in the conspirators' secretly recorded conversations. We find any error was

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

harmless. Wilson also argues there was error in calculating his Guidelines range. No error occurred, and we AFFIRM.

## FACTUAL AND PROCEDURAL BACKGROUND

Samuel Wilson, III, was charged by a superseding indictment with a multitude of crimes, including, as relevant here, conspiracy to possess with intent to distribute methamphetamine and marijuana, possession with intent to distribute marijuana, and possession of firearms by a convicted felon. Wilson pled not guilty and proceeded to trial.

In 2017, agents with the Drug Enforcement Agency ("DEA") and the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") — as well as other law enforcement officers — began investigating Jeremy Mairidith for drug trafficking in Tupelo, Mississippi. During these undercover purchases, Mairidith used slang terms such as "three letter," "cream," and "ice" when referring to methamphetamine and used other slang terms when referring to marijuana and heroin.

In November 2018, agents obtained court authorization to wiretap Mairidith's telephones, and Mairidith emerged as a vital, direct link to the Gangster Disciple drug trafficking organization, and Wilson emerged as a participant.

Considerable evidence was admitted at trial to support the charges against Wilson. We will describe only the evidence relevant to the issues on appeal. Special Agent Frank Elliott, a 32-year veteran of the ATF, testified that he led the investigation of Wilson and the Mairidith drug trafficking organization, that he was present every day in the wiretap room, and that he had heard Mairidith and Wilson speak frequently. Elliott testified that, in light of his review of the conversations, he concluded Wilson and Mairidith were conspiring to purchase and sell methamphetamine and marijuana. At the beginning of Elliott's testimony regarding the calls, defense counsel

objected to Elliott's interpretation. The prosecutor responded that he was not asking Elliott to interpret the calls, and the district court allowed Elliott's testimony. Later, during the course of Elliott's testimony, defense counsel stated he had "a continuing objection to opinion testimony, interpretation, that sort of thing[.]" The district court overruled the objection, stating it would allow Elliott to testify as to what he thought he heard on the taped conversations.

Elliott testified regarding intercepted calls between Mairidith and a person called "Jug," also known as Dmitri Kimble. During two calls, Kimble told Mairidith he was staying at a hotel in Tupelo with a "half a pound." Kimble told Mairidith that "Burn One was going to come get some" — which was an alias for Wilson. A few days later, Elliott was monitoring the wiretap when he heard Wilson ask Mairidith if he got "right on the cream side," and Mairidith responded, "Yes . . . [f]rom Jug."

The jury found Wilson guilty of conspiring to distribute methamphetamine and marijuana (count one), possessing with intent to distribute marijuana (count seven), and being a felon in possession of a firearm on November 28, 2018 (count 11). The district court sentenced Wilson to 262 months on the conspiracy charge; 120 months on the possession with intent to distribute charge, and 120 months on the felon in possession charge, served concurrently; and concurrent supervised release terms of five years, four years, and three years, respectively. Wilson filed a timely notice of appeal.

## DISCUSSION

On appeal, Wilson contends the district court erred in admitting Elliott's testimony related to his interpretations of drug-code jargon and other discussions he overheard during the numerous intercepted calls between Wilson and his coconspirators. Wilson argues that Elliott, who was

not properly offered or qualified as an expert witness, nevertheless gave expert testimony. Wilson notes that in a pretrial disclosure, the Government designated Elliott as an expert in narcotics and firearms investigations, not drug terminology.

Relevant to this appeal, Wilson argues that Elliott improperly testified as an expert when he explained that "gas" means "marijuana, high-grade marijuana" and that "cream" means methamphetamine.

It is questionable whether Wilson preserved his present evidentiary argument for appeal. We review properly "preserved objections regarding the admission of expert or lay testimony for abuse of discretion, subject to harmless error analysis." *United States v. Haines*, 803 F.3d 713, 726 (5th Cir. 2015). On the other hand, if a defendant's "objection during trial is different from the theory he now raises on appeal," plain error review applies. *United States v. Green*, 324 F.3d 375, 381 (5th Cir. 2003).

We need not decide the appropriate standard of review, because Wilson's argument fails under either standard. We explain.

### I.    *Expert versus lay witness testimony*

A witness who is properly qualified by the district court as an expert may state expert opinions if, among other requirements, "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). A lay witness may offer an opinion so long as it is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701.

"The distinction between lay and expert witness testimony is that lay testimony results from a process of reasoning familiar in everyday life, while expert testimony results from a process of reasoning which can be mastered only by specialists in the field." *United States v. Yanez Sosa*, 513 F.3d 194, 200 (5th Cir. 2008) (quotations marks, alterations, and citations omitted). Drug-code terminology is "a specialized body of knowledge, familiar only to those wise in the ways of the drug trade, and therefore a fit subject for expert testimony." *United States v. Griffith*, 118 F.3d 318, 321 (5th Cir. 1997). Even so, law enforcement officers may testify as lay witnesses about their opinions based upon first-hand observations in the specific case or the investigation at issue. *See United States v. Hill*, 63 F.4th 335, 356–57 (5th Cir. 2023).

In summarizing these distinctions, we have explained that a particular drug enforcement agent's testimony can fall into broad categories: "(1) the 'coded' meaning of specific words and terms commonly used in the drug trade; [and] (2) the meaning of specific words and terms used by the particular defendants in th[e] case." *Haines*, 803 F.3d at 728. "[T]estimony in category (1) was permissible expert testimony [and] testimony in category (2) was not permissible as expert testimony, but was admissible as lay opinion testimony," *id.*, based upon the agent's "personal knowledge of the investigation," *id.* at 730.

To the extent Elliott's interpretations of the drug-related jargon relied upon his perceptions from his involvement in this case, the testimony is lay opinion testimony. *See United States v. Miranda*, 248 F.3d 434, 441 (5th Cir. 2001). To the extent Elliott's testimony was based upon his experience or general knowledge of terms employed by drug traffickers, it is indicative of expert testimony. *See Griffith*, 118 F.3d at 321–22. Even if Elliott testified in part as an expert without first being properly qualified as an expert by the district court, evidentiary rulings are subject to harmless error review. *United States v. Jackson*, 636 F.3d 687, 692 (5th Cir. 2011).

As we indicated above, the potential expert opinion testimony from Elliott was only that he explained that "gas" means "marijuana, high-grade marijuana" and that "cream" means methamphetamine. To understand the effect of that testimony, we examine the permissible lay testimony by Elliott or other witnesses that supported that marijuana and methamphetamine were the drugs involved in the offense:

- Wilson delivered, at Mairidith's request, eight ounces of methamphetamine to Stefanie Johnson, a member of the drug trafficking organization.

- Wilson later returned to Johnson's house for payment after she sold the drugs.

- Johnson and Jason Henson, a DEA Task Agent, testified that "cream" refers to methamphetamine and that Mairidith routinely used that slang term and others when referring to methamphetamine to avoid detection by law enforcement.

- Recorded conversations revealed Wilson and Mairidith discussed cream, weed, and dope.

- After Wilson first was arrested, agents searching his trailer and vehicle discovered three firearms, which form the basis of the felon in conviction charge; packages containing 81.6 grams and 114.7 grams of marijuana; and digital scales.

Admission of improper expert testimony will be harmless when that testimony is overwhelmed in its potential effect by other incriminating evidence. *See United States v. Setser*, 568 F.3d 482, 495 (5th Cir. 2009). Here, what may have been expert testimony was quite limited, while other evidence of the kind of drugs involved in the conspiracy was substantial and

unchallenged.  Any errors made by the district court in admitting Elliott's testimony under Rule 702 were harmless.[2]

## II.     Rule 403 standard

Wilson also argues error under Federal Rule of Evidence 403.  That rule states a court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.

Although Wilson relies on Rule 403 as an additional basis for excluding Elliott's testimony, he cites little caselaw in support of his Rule 403 argument.  He primarily reiterates that Elliott's dual-role testimony confused the jury and prejudiced his case because the district court failed to differentiate between his testimony as being that of an expert or lay witness. We find this argument fails because Elliott was not testifying as an expert, and to the extent he was, it was harmless.

In support of his Rule 403 argument, Wilson identifies *United States v. Haines*, in which this court noted that mixed testimony can be grounds for prejudice under Rule 403.   803 F.3d at 730–31.   In *Haines*, the court

---

[2] Wilson also asserts that other portions of Elliott's testimony were inadmissible because he improperly interpreted the motive behind certain actions and improperly opined as to the significance of certain statements.  In that regard, Wilson identifies testimony where Elliott interpreted certain wiretapped conversations to mean that Wilson and Mairidith were purchasing drugs and planned to murder two confidential informants; where Elliott opined on Wilson's emotions; where Elliott interpreted the term "hit a lick" to be drug-related; and where Elliott opined that another conversation showed Mairidith had participated in past criminal activity.  We see no error.  "[A]gents testifying as lay witnesses may testify about the significance of particular conduct or methods of operation unique to the drug business."  *United States v. Staggers*, 961 F.3d 745, 761 (5th Cir. 2020) (quotation marks and citation omitted).  Thus, to the extent the testimony falls into this category of acceptable testimony, the district court did not err by admitting it.  *See id.*

determined that an agent's dual-role testimony, though potentially confusing to the jury and admitted in error, was harmless "because the record — even excluding those portions of [the agent's] testimony in which his role was unclear — [was] replete with evidence" that supported the defendant's conviction. *Id.* at 732–33. That is precisely what we have here. Thus, Wilson's Rule 403 argument fails.

### III.    *Sentencing*

Finally, Wilson argues the district court erred in determining his base offense level. This court reviews the district court's interpretation and application of the Sentencing Guidelines *de novo* and its factual findings for clear error. *United States v. Barfield*, 941 F.3d 757, 761 (5th Cir. 2019). The district court's drug quantity calculation is a factual determination reviewed for clear error. *Id.* at 761–62. "A factual finding is not clearly erroneous if it is plausible in light of the record as a whole." *Id.* at 761 (quotation marks and citation omitted).

A district court determines the advisory Guidelines sentence for drug offenses based on the quantity of drugs involved in the offense. *Id.* at 762; *see* U.S.S.G. § 2D1.1. In drug trafficking cases, that amount may include quantities involved in the defendant's relevant conduct, and a district court may consider estimates of drug quantities where "the amount seized does not reflect the scale of the offense." *Barfield*, 941 F.3d at 762 (quotation marks and citation omitted).

Under Section 1B1.3(a)(1)(B) of the Guidelines, relevant conduct "in the case of a jointly undertaken criminal activity" includes "all acts and omissions of others that were" "within the scope" of the joint activity, "in furtherance" of it, and "reasonably foreseeable" to the defendant. Thus, for cases involving controlled substances, a defendant is accountable for all substances with which he was "directly involved" and for substances

"involved in transactions carried out by other participants, if those transactions were within the scope of, and in furtherance of, the jointly undertaken criminal activity and were reasonably foreseeable in connection with that criminal activity." § 1B1.3, cmt. n.3(D); *see United States v. Johnson*, 14 F.4th 342, 345 (5th Cir. 2021), *cert. denied*, 142 S. Ct. 928 (2022).

Here, the base offense level was determined by the amount of methamphetamine and marijuana involved in the entire offense. An intercepted call between Mairidith and Kimble indicated that they negotiated the quantity and price of the methamphetamine and later met to complete the transaction, and that the purchase was reported to Wilson. Because Wilson offered no evidence showing the information was unreliable, it was reasonable for the district court to infer from these facts that Wilson should be held accountable for the disputed drug quantity. The "district court is permitted to draw reasonable inferences from the facts." *United States v. Muniz*, 803 F.3d 709, 712 (5th Cir. 2015). There was no clear error regarding the district court's drug quantity calculation.

AFFIRMED.